## The People of the State of Illinois, Defendant in Error, v. John Goehringer, Plaintiff in Error.

### Gen. No. 6,071.

1. JURY, § 66*—*when challenge to array on ground women not included in jury lists properly overruled.* In a criminal case a challenge to the array on the ground that women were not included among the number of legal voters in making up the jury lists *held* properly overruled, women being not made eligible for jury service by the fact that they are made voters in elections of certain officers.

2. JURY, § 79*—*when abridgement of right of examination error.* In a criminal case it is error to abridge defendant's right to a reasonable examination of jurors.

3. JURY, § 80*—*what questions proper to determine existence of bias.* In a prosecution for keeping open a tippling house on Sunday, where the principal witnesses appearing for the prosecution were

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People v. Goehringer, 196 Ill. App. 472.

the same as those appearing in a similar case previously tried, questions propounded to a juror who had also acted as such in such previous trial, as to his memory of such testimony and whether it would influence him in the present trial, examined and *held* proper matters of inquiry, to determine the predisposition and bias of the juror, and his mental state as to fairness.

4. JURY, § 80*—*how juror may be examined as ground for challenge for cause or peremptory challenge.* Within reasonable limits each party to an action has the right to examine a juror as to predisposition, bias or prejudice, and as to his mental state with reference to fairness in order to show not only a state of facts which may give ground for a challenge for cause, but also to enable the party to decide whether to exercise the right of peremptory challenge.

5. JURY, § 80*—*what questions proper to determine bias.* It is often indispensable to an intelligent selection of a fair and impartial jury that the occupation, habits, associations and predisposition of a juror be known in so far as such facts might tend to bias or pervert the juror's judgment.

6. JURY, § 3*—*right to trial by in criminal cases.* Defendants in criminal cases are guarantied a trial by a fair and impartial jury, an object in which society is equally interested.

7. JURY, § 72*—*what is extent of right to peremptory challenges in criminal cases.* In order to obtain a fair and impartial jury in a criminal case, defendants are given by law the right of peremptory challenge to be exercised at the discretion of such defendant, which right may not be limited or restricted by the courts.

8. JURY, § 79*—*when reasonable examination should be allowed.* Reasonable examination of jurors by counsel should always be permitted so as to enable the court to see that the jurors stand indifferently between the parties and are possessed of the necessary qualifications.

9. WITNESSES, § 19*—*when detective competent witness.* In a criminal case the evidence of detectives who have been employed to secure evidence against defendant is competent.

10. WITNESSES, § 216*—*what latitude allowed in cross-examination of detectives.* In a criminal case where the principal witnesses for the prosecution are private detectives who have been employed and paid to secure evidence against defendant, full opportunity should be given to defendant to test the credibility of such witnesses by cross-examination and by other means provided by law for testing such credibility, and in such case cross-examination should be allowed the same latitude as in the case of a witness who is shown to be personally hostile to defendant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. WITNESSES, § 212*—*when error to unduly restrict examination of hostile witness.* In a criminal case it is error to unduly restrict the scope of defendant's cross-examination of a witness who is shown to be personally hostile to defendant and to have an inordinate desire that he be convicted, defendant in such case having a right to the broadest latitude in cross-examination, in order to test the credibility of such witness.

12. WITNESSES, § 216*—*what scope allowed in cross-examination of detectives in prosecution for keeping tippling house open on Sunday.* In a prosecution for keeping a tippling house open on Sunday, where the prosecuting witnesses were private detectives employed and paid to secure evidence against defendant, and where one of the witnesses partly based the accuracy of his testimony on notes taken at the time of the acts testified to, *held* that defendant had a right to a complete cross-examination of such witnesses as to their sobriety on such occasions as bearing on their credibility and on the weight of their testimony, the number of saloons visited and the number of drinks taken bearing legitimately on the accuracy of their observations on those occasions and the reliability of their recollections, as well as on the evidentiary value of such notes.

13. WITNESSES, § 212*—*when improper to exclude on cross-examination evidence which may be used as basis for impeachment.* In a prosecution for keeping a tippling house open on Sunday, a witness testified that on a named date he had gone directly to defendant's place after reaching North Chicago, and was asked by counsel for defendant on cross-examination: "Did you testify in the case of *People v. Krause*, a few days ago?" Answer: "Yes." "Did you testify that before you got to Goehringer's that you had been to seven or eight places?" On objection the court ruled out the answer to the last question. *Held*, that witness should have been allowed to answer the question, being proper both in form and substance, since the answer might have laid a foundation for the impeachment of the credibility of the witness.

Error to the County Court of Lake county; the Hon. DAVID T. SMILEY, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded. Opinion filed December 8, 1915.

E. V. ORVIS and JAMES G. WELCH, for plaintiff in error.

R. J. DADY and E. M. RUNYARD, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case the plaintiff in error, John Goehringer, was tried by a jury, in the County Court of Lake county, and found guilty on the fifth, sixth and seventh counts of an indictment, charging him with keeping open a tippling house on Sunday. The plaintiff in error made a motion for a new trial, and in arrest of judgment, but both motions were denied by the court, and he was thereupon sentenced to pay a fine of $200 on each of the three counts upon which he was found guilty, and costs of suit. It was ordered by the court that he be committed to the county jail until the fine and costs were fully paid; also that in case of his neglect or refusal to pay, he be required to work out the fine and costs on the public roads of Lake county, at the rate of $1.50 per day.

Various errors are assigned, and it is insisted that plaintiff in error did not have a fair and impartial trial. Plaintiff in error also assigns as error, the overruling of his challenge of the array of jurors, which was on the ground that the county board, in making up the jury lists, had not placed the names of women voters among the number of legal voters, from which the lists were made up. We are of opinion that the challenge was properly overruled. The same point involved here was decided by this court, at the present term, in the case of *People v. Krause, ante,* p. 140. It was there held that while women are legal voters for the election of statutory officers and certain other purposes, they are not thereby made eligible for jury service.

The plaintiff in error also claims that he was denied proper latitude in the examination of jurors; and that his right of cross-examination of the prosecuting witnesses, on material matters, was unduly abridged. It is well settled that a defendant in a criminal case is entitled to a reasonable examination of the jurors, so

that he may intelligently exercise his right of challenge, either a challenge for cause, or a peremptory challenge, and that it is error to abridge this right. It appears from the record that the plaintiff in error attempted to make a certain inquiry of a juror who had been called to the box, and who had been a juror in another similar case, which had previously been tried, and in which witnesses testified for the prosecution, who also appeared as the principal witnesses on the indictment in the present case. Counsel sought to inquire whether this juror had any impression, from what he had heard in the other case upon the question, whether or not these witnesses were in fact in North Chicago on the Sundays involved. The court would not permit the inquiry to be made. Counsel for plaintiff in error also attempted to inquire if anything the juror had heard, in the case of *People v. Keighko* (in the event the same witnesses testified), would lead him to give more or less credence to the testimony of those witnesses; but the inquiry on objection was cut off by the court. He also attempted to inquire of a juror whether such juror, upon recalling the former testimony of these witnesses in the other case, had any impression as to any of the facts, which these same witnesses had testified to in the other case; but the court sustained an objection to the question. Counsel also attempted to ascertain from a juror this fact: In case any of the witnesses were called in the present case who had been called, either for the State or for the defense, in the other case, which the juror had tried, would the impression the juror had formed of the truth and falsity of their testimony in the other case impress him in this case? But the court sustained an objection to the question, and cut off the inquiry. This question also was asked of a juror: "Have you any impression, assuming that those witnesses who will testify that they were in North Chicago on the same dates and in this particular defendant's place on one

of those dates, the facts that you have heard in the other case, would you have any impression now as to whether any of those facts are true or false?'' But an objection to the question was sustained by the court, and the inquiry cut off.

We are of opinion that all the matters suggested by these questions were proper matters of inquiry. The right to examine a juror for the purpose of ascertaining his predisposition, or his bias, and his mental state, with regard to fairness, with a view to the intelligent exercise of the right of challenge, would be of very little value, if answers to questions such as these indicated could not be elicited. ''Within reasonable limits, each party has the right to put pertinent questions, to show not only that there exist proper grounds for a challenge for cause, but to elicit facts, which will enable him to decide whether or not he will exercise his right of peremptory challenge.'' (Thompson on Trials, 99.)

''In order to determine whether the person who may be called as a juror possesses the necessary qualifications, whether he has prejudiced the case, whether his mind is free from prejudice or bias, the suitor has the right to ask him questions, the answers to which may tend to show that he may be challenged for cause, or disclose a state of facts from which the suitor may see proper to reject such juror peremptorily.'' *Lavin v. People,* 69 Ill. 304.

And the Supreme Court in the case of *Donovan v. People,* 139 Ill. 412, reiterated with increased emphasis the rule expressed in the *Lavin* case, *supra.* The language of the court on this point is as follows: ''It is often indispensable to an intelligent selection of a fair and impartial jury, that the occupation, habits, associations and predisposition of the juror should be known, so far as they might tend to bias or pervert his judgment. To deprive a party, whether the People or the defendant, of an intelligent exercise of the right, is practically to take away the right. And every lawyer

experienced in the trial of causes knows that to its intelligent exercise a reasonable examination of the juror is frequently absolutely necessary. If this may not be done, the People and the defendant alike must take all who are not subject to challenge for cause, or resort to peremptory challenge indiscriminately, and without that knowledge, easily within reach, if reasonable examination is permitted, which would enable them to exercise the right intelligently. The defendant is guarantied, in every criminal case, a trial by a fair and impartial jury, and society is equally interested in the selection of none other; and in view of this object to be attained in impaneling the jury, the law-making power of the state has deemed it wise to give the right of peremptory challenge, to be exercised in the discretion of the party entitled, and the courts are not authorized to limit or restrict the right  *  *  *. Such reasonable examination by counsel should always be allowed as will enable the court to see that the jurors stand indifferently between the parties and are possessed of the requisite qualifications, and also to enable counsel to challenge for cause, if cause exists, or to exercise the right of peremptory challenge when in their judgment it is deemed necessary or advisable.''

It is apparent that the cross-examinations of the prosecuting witnesses were also unduly restricted. The evidence of guilt of the plaintiff in error did not come from officers who are chosen or charged with the duty of investigating violations of law, and with the duty of procuring the evidence of the guilt, but rested upon the testimony of two private detectives, who had been employed to secure the evidence upon which to base a conviction, for a certain remuneration.

This class of witnesses are legally competent; but it is clear, also, that a defendant in a criminal case should be given full opportunity to apply the tests provided by law for determining the credibility of such witnesses, one of which is cross-examination; and the

cross-examination should not be any more restricted in the case of such witnesses, who, because of apparent personal interest in the result of a trial, may have developed an inordinate desire to secure a conviction, than of a witness who, by reason of personal hostility to the defendant, has perhaps developed the same kind of a desire. In all such cases, the broadest latitude in cross-examination should be allowed, and it is error to unduly abridge it. *Sutton v. People,* 119 Ill. 254.

Complete cross-examination of these prosecuting witnesses, concerning matters which might have a material bearing on their credibility, such as the condition of these witnesses with reference to sobriety, should have been allowed. Their condition as to sobriety was an essential element to be considered, in determining not only the accuracy of their observations, and the reliability of their recollection, but also the evidentiary value of the notes which they claim to have taken on the Sundays in question, upon which one of these witnesses testified, he partly based the accuracy of his testimony. The number of saloons which they visited on the Sundays in question, as well as the number of intoxicating drinks which they imbibed, therefore had a legitimate bearing upon the weight of their testimony.

It also appears in the record that the witness Walter F. Youngs, having previously testified that on May 3rd, after reaching North Chicago, he had gone with his brother directly to the place of the plaintiff in error; and the counsel for plaintiff in error propounded the following questions: ''Did you testify in the case of *People v. Krause,* a few days ago?'' Answer: ''Yes.'' ''Did you testify, that before you got to Goehringer's, that you had been to seven or eight places?'' The latter question was objected to, and the court sustained the objection and ruled out the answer. This question was a proper one, in form and substance; and the witness should have been al-

lowed to answer it, inasmuch as the answer might have laid the foundation for an impeachment of the credibility of the witness. *Math v. Chicago City Ry. Co.,* 243 Ill. 122; *Chicago City Ry. Co. v. Matthieson,* 212 Ill. 292; *Chicago West Division Ry. Co. v. Ingraham,* 131 Ill. 668.

For the errors mentioned, the case must be reversed and the cause remanded for another trial.

*Reversed and remanded.*