**People of the State of Illinois, Plaintiff-Appellee, v. Walter Scott, Defendant-Appellant.**

**Gen. No. 49,578.**

First District, First Division.

October 4, 1965.

Jack S. Levin, Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Alan H. Swanson, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant, Walter Scott, was found guilty of burglary and was sentenced to the penitentiary for a term of 5 to 10 years. On appeal, defendant contends that (1) he was deprived of his constitutional rights in that incriminating statements obtained by the arresting officers without advising him of his constitutional right to counsel were introduced as evidence, and in that his trial counsel was unprepared and inadequate to defend him; (2) he was erroneously denied a change of venue; (3) prejudicial trial errors were committed; and (4) he was not proven guilty beyond a reasonable doubt.

On June 24, 1963, when James A. Stolp returned to his apartment at 7243 South Jeffery Avenue, Chicago, he found the back door was open, and it had several broken glass panes. There were glass splinters in the door and pieces of glass held together with white surgical tape lay on the floor. The apartment had been ransacked, and two cameras, two camera lenses, a suitcase, and $100 in currency were taken.

An investigating police officer, Edward Willett, on June 25, 1963, took pictures of fingerprints found on the glass on the floor. Later, on July 3, 1963, Joseph Mortimer of the police crime laboratory determined

that the fingerprints found in the apartment were identical with the fingerprints of Walter Scott. With this information, Officers Wielosinski, Dooley and Ormond, without obtaining an arrest warrant, went to 1415 East 73rd Street, where Walter Scott was staying with the Walter Young family. They arrived at the Young apartment at about 1:00 p. m. on July 3, where they were informed by Mrs. Young that Scott was at work. The three police officers remained in the vicinity of the apartment until 3:00 a. m. on July 4, when Scott appeared and was arrested. After being placed in custody, a satchel he was carrying was examined, and it contained barber equipment and white surgical tape. Two of the arresting officers testified that he admitted the burglary and told them he had pawned one of the cameras. He produced a pawn ticket and gave it to them. When they arrived at the police station, he told them that the other camera was at a friend's house. The policemen went with him to the home of his friend and obtained a camera. On July 5, the policemen went to the pawn shop and in return for the pawn ticket given to them by the defendant, they received a second camera. At the trial, both cameras were identified by Stolp and received in evidence.

Defendant testified on direct examination that he was a licensed barber and a licensed beautician, and that he had been previously convicted of a felony. He denied that he committed the burglary and theft with which he was charged and stated that the police officers were lying when they said they had received a pawn shop ticket from him or that he had admitted "that I burglarized this particular home."

He further testified: "On the night that I was picked up I had white adhesive tape in my bag. I recall getting into the car with three officers and having a conversation with them. I gave them a ticket per-

236

taining to a watch repair and a receipt for $4. . . . It is not a fact that I gave them a pawn ticket. . . . I gave them the watch ticket because that is all I had in my possession. They wanted to check it out to see if it was stolen. They questioned me about items they claimed were stolen from Mr. Stolp's apartment. They told me that some cameras had been taken. They asked me if I owned any cameras. I owned one camera which I bought. I am saying that I bought this camera. I bought it from James Thomas. I don't know where he is today. . . . I paid $35 for the camera. This camera was obtained at the apartment of Mr. O'Neill. I took the Police Officers over to this apartment to get the camera. Mr. Lucius O'Neill appeared at the window and handed the camera down that I had left there." Defendant stated further that he bought the camera to use in his business to advertise, and he had left it at Mr. O'Neill's apartment because "we had just 'came' from the beach."

We consider first defendant's contention of deprivation of his constitutional rights. Initially, he contends that "under the circumstances here presented, the use at trial of a confession obtained by systematic interrogation after arrest without any warning to the defendant of his right to remain silent deprived him of his Fifth Amendment rights. We [defendant's counsel] also contend that the effect of that confession obtained without warning of his rights to counsel and to remain silent, combined with the trial court's refusal to afford defendant effective trial counsel after he had informed the Court of his counsel's unpreparedness deprived him of his Sixth Amendment rights."

It is not disputed that defendant was never informed by the police officers, during his initial police interrogation or at any other time, of his right to remain silent or of his right to the advice or assistance of counsel, nor is it disputed that defendant made no re-

quest for the assistance of counsel during his initial police interrogation. The testimony of the two arresting officers as to the admission of the burglary was received without objection on behalf of the defendant, and he testified the officers were lying.

Although the confession issue was not raised at the trial level, and defendant denies making any confession, we have considered this contention on appeal. ■ The cases cited by defendant in support of this contention include Escobedo v. Illinois, 378 US 478, and People v. Dorado, 40 Cal Rptr 264, 394 P2d 952. We have considered defendant's authorities, but we believe the pronouncements made in People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (1964), are controlling here. A failure to warn the accused does not compel a rejection of his confession of guilt. As said at page 379:

> "[It] is an attendant circumstance 'which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession.' 373 US at 517. . . .
>
> Page 380:
> "We do not, however, read the Escobedo case as requiring the rejection of a voluntary confession because the State did not affirmatively caution the accused of his right to have an attorney and his right to remain silent before his admissions of guilt.
>
> Page 381:
> ". . . It must be noted that neither the petition to suppress nor defendant's testimony at the hearing on the petition raised any suggestion that his confessions were induced by a promise of leniency. This question arose only after an extensive cross-examination of one of the police officers, in which he admitted that he told the defendant, 'It would

go easier for him in court if he made a statement.' This is in no way the direct promise of leniency made in People v. Heide, 302 Ill 624. Such a mere suggestion of the advisability of making a statement does not in itself render a confession involuntary. People v. Pugh, 409 Ill 584, 593; People v. Weber, 401 Ill 584, 598."

The foregoing pronouncements of our Supreme Court were buttressed in People v. Kees, 32 Ill2d 299, 302, 205 NE2d 729 (1965):

"This court, however, in People v. Hartgraves, . . . has aligned itself with those courts which have construed Escobedo to be limited to the peculiar facts of the case, and have rejected it as promulgating the sweeping rule that a confession may not be received if made by an accused without counsel, or unless the right to counsel has been intelligently waived."

 Examining the circumstances of the making of defendant's alleged confession, we find no evidence of coercion or any promise of leniency, and none is charged. A reading of the entire record indicates by overwhelming weight of the evidence that defendant voluntarily confessed to the burglary when, as testified to by one of the police officers, they "told him that we had fingerprints that put him on the scene of the burglary." We find no error here.

Defendant's next constitutional contention is the "denial of effective and prepared trial counsel." The record indicates defendant selected his own attorney, and that she had appeared numerous times in his behalf prior to the commencement of the instant trial. During the second day of the trial, at 2:00 P. M. on January 21, 1964, defendant's attorney informed the court that she had not received compensation, and at

her request the court appointed her "nunc pro tunc as of January 2, 1964," to represent defendant so that she might receive compensation for her services.

The record further shows that on the morning of January 21, 1964, at the opening of the second day of the trial and before the presentation of any evidence, defendant stated to the court, "I would like to relieve my lawyer in this case, because we can't seem to come to any agreement as far as my defense is concerned. . . . I would like to be appointed a Bar Association attorney." After some discussion between the court and the defendant, the request was denied. The remarks of the court include, "You have counsel here who is dedicated to her defense, who is specially able and experienced. This Court has heard her conduct the defense of a client in a very serious trial the Court just concluded. . . . You didn't indicate yesterday before we began to select the jury, that you weren't ready. . . . Not at this stage of the proceedings. Your motion is denied."

The State argues that this request was made too late because it was made "after the preliminary hearing on the Motion to Suppress the Physical Evidence, after numerous appearances by his private counsel, after a Motion to Dismiss was argued and denied, after the defendant himself said he answered ready for trial every time he was in court except September 20th, 1963, after the defendant elected to be tried by a jury, after the defendant, through his attorney, answered ready for trial on January 20, 1964, and after the selection and impanelling of a jury by his trial counsel."

To show the incompetency of his counsel, defendant asserts that she failed to call six witnesses in his behalf, and "she was so dismally prepared as to be unable to effectively defend him." Defendant also complains that his "court-imposed attorney repeatedly

240

flagged his prior conviction of a 'similar' burglary," and "it was not altogether clear which side defendant's 'trial counsel' was on."

■ ■ We have carefully scrutinized this record, and we believe it amply demonstrates that defendant's counsel was professionally competent and prepared for his defense. The calling of witnesses and the bringing out of a prior conviction are questions of trial tactics and strategy, and not all attorneys agree on trial strategy. As said in People v. Stephens, 6 Ill2d 257, 259, 128 NE2d 731 (1955):

> "Where a defendant in a criminal case employs counsel of his own choice, his judgment of conviction will not be reversed merely because his counsel failed to exercise the greatest skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder."

■ Also, as said in People v. Jones, 51 Ill App2d 391, 394, 201 NE2d 194 (1964):

> "Such motions must be presented at the earliest practical moment. . . . To hold otherwise would be to advance no theory of public policy while causing chaos to reign in the courtroom."

We find no cause for reversal here.

Defendant further contends that he was denied a change of venue to which he was entitled as a matter of right. Defendant argues that "an application for a change of venue because of prejudice can be made on the day the case is called for trial, even though the defendant has previously announced his readiness to proceed, provided the knowledge of prejudice first came to the defendant on that day. People v. McGlothen, 26 Ill2d 392, 186 NE2d 319." The record shows that on January 20, the day the case was called

for trial, the court heard extended arguments and denied defendant's motion for dismissal under the Fourth Term Statute. Defendant's attorney then answered ready for trial, and twelve jurors were "accepted by counsel for the State and the Defense, whereupon said cause was adjourned until 10:00 o'clock a. m. the following day, Tuesday, January 21, 1964."

On the following morning, January 21, 1964, and after defendant's motion for a "Bar Association attorney" was denied, defendant stated, "Your Honor, I just don't want to be tried in this court. I want a change of venue," and the court replied, "That comes too late. That will be denied. . . . Your motion for a change of venue is untimely. We will proceed. Call the jury." When the jury was brought into the courtroom, the clerk informed the judge that the jurors had been sworn. One of the attorneys said, "All twelve were not sworn, Judge," and the court thereupon directed the twelve jurors be sworn to try the issues in the cause.

■ ■ As said in People v. Kostos, 21 Ill2d 451, 173 NE2d 469 (1961), our Supreme Court has repeatedly held that the venue provisions should receive a liberal rather than a strict construction, "and should be construed to promote rather than to defeat an application for a change of venue, particularly where prejudice on the part of the judge is charged." Also, as said in People v. McGlothen, 26 Ill2d 392, 186 NE2d 319 (1962): "The right to a change of venue is absolute, provided that the requirements of the statute are met." However, we are of the opinion that neither of these cases is controlling here because the factual situations are not the same. In the Kostos case, the petition for change of venue was filed on December 28, 1959, and alleged that the petitioner had learned of the prejudice of the trial judge against him on

December 21, 1959. The petition was denied on the basis of the court's ruling "that since the alleged prejudice was known to counsel on December 9, the application for change of venue was not filed in apt time" (p 453). The Supreme Court held that the acquired knowledge of the alleged prejudice came to the "knowledge of the applicant," the defendant, on December 21 and therefore the petition of December 28 was filed in apt time. In the McGlothen case, defendant informed the court that he wanted a bench trial, and the court announced that the case would be held on call. After a short recess, defendant's counsel informed the court that defendant had just learned facts indicating that the judge was prejudiced against him and requested that the defendant be granted a change of venue. The Supreme Court held (p 394):

> ". . . where the defendant stated that knowledge of the prejudice came to him during the recess, the actual filing of the motion in open court was the only notice possible, and was reasonable under the circumstances."

■ In the case at bar, the motion for change of venue was not presented until after twelve jurors had been accepted by both sides. Although the jurors were passed upon and accepted in panels of four on January 20, 1964, there appears to be a question as to whether the entire jury was sworn at that time to try the issues. However, the point at which the jury was sworn to try the issues is not determinative of defendant's contention. His trial commenced when the jury was called into the jury box for examination as to its qualifications, and defendant's motion for change of venue came too late because the trial had begun. (Wilhite v. Agbayani, 2 Ill App2d 29, 33, 118 NE2d 440 (1954); People v. Poole, 284 Ill 39, 40, 119 NE

916 (1918); 88 CJS, Trial, § 2, p 21). We hold that the denial of the change of venue by the trial court was correct.

 Defendant next contends that "all evidence obtained incident to defendant's unconstitutional arrest should have been excluded." Defendant asserts that at 1:00 p. m. on July 3, 1963, the three police officers went to Walter Scott's residence and learned that he was at work a short distance away, and the "three detectives spent the next 14 hours drinking coffee in Scott's apartment and resting in front of the building in which Scott lived. At no time during this protracted period did any one of the three go to Scott's place of employment. Nor did any one of them make an attempt to obtain a warrant for Walter Scott's arrest." The State points out, "There was no trial objection to the admission of this evidence and of testimony of the officers at the time of trial. It is elementary that a review on this ground should be denied." We agree, but we have considered this point and believe that the pronouncements in People v. Jones, 31 Ill2d 240, 243, 201 NE2d 402 (1964), apply here:

> "The test, therefore, is not whether it was reasonable or practicable for the officers to obtain a search warrant, but whether the search was unreasonable. It is well established that a search without a warrant is reasonable and valid if it is incident to a lawful arrest and there is no requirement that the arrest be under the authority of an arrest warrant. (Ker v. California, 374 US 23, 41, 83 S Ct 1623, 10 L Ed2d 726.) In turn, the validity of an arrest without a warrant depends upon whether the officers had reasonable cause to believe that an offense had been committed and

244

that the defendant had committed it. (People v. Jones, 16 Ill2d 569, 573.)"

We find no error here—an offense had been committed and the officers had reasonable cause to believe that the defendant had committed it.

■ Defendant next contends that "it was prejudicial error for the State's Attorney to ask defendant about his previous convictions and to characterize him as 'a burglar.' " Defendant's counsel, in her opening statement and in her final argument, and defendant, on his direct examination, stated that defendant had been convicted of a prior felony. We conclude that the alleged errors were not prejudicial because the defendant deliberately opened the door in this area. See People v. Nastasio, 30 Ill2d 51, 58, 195 NE2d 144 (1963); People v. Woodley, 57 Ill App2d 380, 206 NE2d 743 (1965).

■ We consider finally defendant's contention that there was insufficient evidence to prove him guilty beyond a reasonable doubt. There is substantial evidence in this record to sustain defendant's conviction of burglary. The fingerprints found at the scene of the burglary and the fruits of the burglary recovered by the police from information given them by the defendant are substantial evidence and are corroborated by the testimony of credible witnesses. Although defendant denies the confession of the burglary, we believe it was within the jury's province to determine the credibility of the police officers and to accept what testimony they believed and reject what testimony they did not believe. People v. Garcia, 52 Ill App2d 481, 487, 488, 202 NE2d 269 (1964).

Our review of this record satisfies us that defendant's guilt was proved beyond a reasonable doubt,

and that he received a fair trial, free from prejudicial error.

For the reasons given, the judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.