The People of the State of Illinois, Plaintiff-Appellee, *v.* Robert Williams (Impleaded), Defendant-Appellant.

(No. 56427;

First District (2nd Division)—September 18, 1973.

LEIGHTON, J., dissenting.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

After a jury trial defendant was convicted of armed robbery and was sentenced to a term of seven to twelve years in the penitentiary. On appeal he contends:

1) He was deprived of due process of law by being required to choose between the right to the effective assistance of counsel and the right to a trial within 120 days;

2) The denial of his motion for a continuance in order to obtain different counsel was an abuse of discretion and was a denial of his right to have the assistance of counsel of his own choice;

3) It was error to deny his motion to suppress lineup identification evidence; and

4) The sentence imposed was excessive.

Shortly past midnight on the morning of September 21, 1970, three men, subsequently identified as Isaac Snulligan, Timothy Williams and defendant, entered the Sparta Grill located at 331½ N. Central Avenue, Chicago, Illinois. Timothy Williams stood near the door. Snulligan and defendant walked to a position near the cash register. Defendant requested change for a dollar. The grillman, Nick Markos, complied with the request. Defendant then requested change for a quarter and was again accommodated. A customer entered and ordered soup. Mr. Markos went from the cash register to the end of the restaurant to procure the order. This action required him to turn his back to the patrons. He then heard a command, "Don't move, I have a gun." He raised his hands, turned around and observed Snulligan pointing a gun at him. Defendant opened the cash register and removed approximately $200. The three men fled from the grill. They had been in the restaurant for a period of five to seven minutes. The lighting was "very bright."

Joseph Muriullo observed Snulligan and defendant exit the grill and run on a northbound angle across Central Avenue. He observed defendant's face for "a matter of seconds" when defendant was ten to fifteen feet from him. He also observed that defendant was wearing red or burgundy slacks and a yellow shirt. The lighting was described as "bright."

Officer James Nowdonski of the Chicago Police Department stopped two men running in the vicinity of Fulton and Central. They identified themselves as Timothy Williams and Isaac Snulligan and were thereafter released. Officer Nowdonski returned to his vehicle and received a radio report that the Sparta Grill had just been robbed by three men. He observed Snulligan enter an automobile parked about three blocks from the restaurant. He approached the vehicle and observed Snulligan in the rear seat. Defendant and a female, Margaret Leonard, were in the front seat. Timothy Williams was walking westbound on Fulton. When defendant exited the automobile he was "breathing heavy." The group was arrested and $192 was recovered from the rear seat of the automobile.

A lineup consisting of Timothy Williams, Snulligan, defendant and two other men was conducted shortly after 1:00 A.M. on September 21, 1970. Nick Markos identified Timothy Williams, Snulligan and defendant as the men who had robbed him. Joseph Muriullo identified Snulligan and defendant as the two men he had observed running from the grill.

On the morning of January 18, 1971 (the 119th day during which defendant had been in custody), defendant and Timothy Williams were arraigned and the Public Defender, without objection from either accused, was appointed to represent them. When the trial began that afternoon, the Public Defender told the court that he had informed defendant that he was unprepared to go to trial because he had not had time to investigate the case, but he also stated that defendant, however, said he was ready for trial. The court inquired as to defendant's desire and defendant replied, "We demand trial now." The Public Defender then presented pretrial motions to the court and jury selection commenced. After a panel of jurors had been interviewed the case was recessed to the next day.

On January 19, 1971, the process of jury selection was continued. After the prospective jurors had been instructed as to voir dire procedures, they were excused until January 20, 1971. Defendant then indicated to the court that he desired to select his own jury and that he wanted an attorney other than the Public Defender. The court suggested that defendant give more consideration to his request for a different attorney and recessed the matter until January 20, 1971.

On January 20, 1971, the court explained to defendant that the Public Defender desired additional time to prepare the case, but that defendant could decide to go to trial immediately. The potential consequences of defendant's decision were completely and exhaustively explained to him. Defendant stated that he understood the court's admonitions as to the possible consequences but that he still wanted to proceed to

trial. At this point the Public Defender stated that he nonetheless was requesting a continuance. Defendant again demanded trial. The process of jury selection was thereafter resumed without any ruling on the Public Defender's motion for a continuance.

On January 21, 1971, defendant requested a continuance so that he could seek other counsel. The State opposed the request. The court inquired of codefendant Timothy Williams whether or not he too desired a continuance. Timothy Williams stated that he preferred to go to trial. Defendant inquired as to the court's decision regarding his request for a continuance and was told, "Sit down. We are going to trial." Timothy Williams pleaded guilty and was sentenced. Thereafter the Public Defender reported that he thought he had located a necessary witness for the alibi defense, Margaret Leonard, and he was withdrawing motion for a continuance, since he was adequately prepared to argue the pretrial motions and would be adequately prepared for the evidentiary stage of the trial when that stage would be reached on the 25th of January. The court indicated that it would continue the matter until January 25, 1971, if the Public Defender needed the time. After a hearing on pretrial motions the case was recessed until January 25, 1971, on which date the taking of evidence commenced.

Defendant initially contends that he was denied due process of law by being required to choose between the right to the effective assistance of counsel and the right to a trial within 120 days. Defendant's argument proceeds as follows: He asserts that the Public Defender was not appointed to represent him until he was arraigned and the State did, therefore, delay the appointment of counsel by delaying the arraignment, over which it had complete control, without any explanation whatever. When the arraignment, and the appointment of counsel, was delayed until the 119th day of the 120 day statutory period in which the State must try a defendant, appointed counsel could not be prepared to effectively assist his client at the trial which the State caused to begin that same afternoon, since there was no time for preparation. If defendant desired the effective assistance of counsel, he would have been forced to request a continuance so that appointed counsel could investigate the case, but such request would have extended the period in which the State could bring him to trial. Conversely, by electing to exercise his right to a trial within 120 days, he was thereby forced to forfeit his right to the effective assistance of counsel since counsel could not properly prepare for trial on such short notice. Defendant concludes by asserting that he was deprived of due process of law by being required to make this choice. We disagree.

In *People v. Johnson*, 45 Ill.2d 38, 43-44, 257 N.E.2d 3, it was said:

"To argue that he was forced to choose as he did is to argue technicalities. The right to a speedy trial and the right to avoid a precipitous trial are separate but related rights. Both are designed to assure an accused a fair trial, to prevent undue delay in one instance and undue haste in the other. He can demand action or avoid action as the exigencies of his situation may dictate. But fairness and justice are not a one-way street. Society is likewise entitled to a fair administration of justice and the measure of right and wrong must always be that which is fair, not that which is technically astute or contrived. The fact that on occasion the accused might have to jeopardize the legislative benefits of the four-month rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial."

■■ Defendant nonetheless asserts that the recent case of *People v. Carr*, 9 Ill.App.3d 382, 292 N.E.2d 492, requires a reversal of the instant case. *Carr* merely holds that, where appointed counsel, as a *bench* trial was about to begin, requests a continuance on the ground that he requires more time for preparation, it is not an abuse of discretion for the court to grant the request notwithstanding defendant's repeated strenuous objections and notwithstanding that the continuance is chargeable to defendant so as to extend his four-term period. In the case at bar the Public Defender did not request a continuance when the proceedings began. He merely informed the court that he had indicated to defendant that he would not be prepared to go to trial and concluded his remarks by stating that defendant was ready for trial. Furthermore, in *Carr* there was no indication that defendant therein was aware of the possible consequences of an immediate bench trial. The court merely granted counsel's request for a continuance. In the case at bar, however, the record clearly reflects that defendant was more than adequately apprised by the court, in a lengthy and detailed explanation, of the possible consequences of proceeding to trial before his appointed counsel could further investigate the case. Defendant stated that he understood the potential consequences and nonetheless persisted in his demand for an immediate trial. We are convinced that defendant knowingly and intelligently elected to proceed to trial with full knowledge of the possible consequences of this choice.

Defendant next contends that the denial of his motion for a continuance to enable him to secure private counsel was an abuse of discretion and a denial of his constitutional right to have the assistance of counsel of his own choice.

In *People v. Solomon*, 24 Ill.2d 586, 589-590, 182 N.E.2d 736, it was said:

"The granting of a continuance to permit preparation of a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. [Citations.] Before a judgment of conviction will be reversed because of the denial of such a motion, it must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. [Citations.]

\* \* \*

While an accused in a criminal case does indeed have the constitutional right to be represented by counsel of his own choosing, it is likewise true that such right may not be employed as a weapon to indefinitely thwart the administration of justice, or to otherwise embarrass the effective prosecution of crime. [Citations.]"

■■ In the instant case defendant did not object when the Public Defender was appointed to represent him. Only after a jury selection had commenced did he voice his dissatisfaction with appointed counsel and a desire to "have [his] own lawyer." Defendant had previously stated that he did not have funds to procure counsel on his own and he never indicated that arrangements for private counsel had been or would be made. The facts of this case disclose neither an abuse of discretion in denying defendant's request for a continuance nor a denial of his right to have counsel of his own choice.

The cases cited by defendant ( *People v. Ritchie,* 66 Ill.App.2d 417, 213 N.E.2d 306; *People v. Cohen,* 402 Ill. 574, 85 N.E.2d 19; *People v. Green,* 42 Ill.2d 555, 248 N.E.2d 116; *People v. Willis,* 6 Ill.App.3d 980, 286 N.E.2d 72.) are inapposite. In each of those cases arrangements had been made for the assistance of counsel other than the one who had been appointed. No such facts are present in the case at bar.

■■ Defendant next contends that it was error to deny his motion to suppress identification evidence. It is well established that suppression of identification evidence is required only when it appears that the procedures employed, considering all the circumstances of the pretrial identification, were so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification. *People v. Jones,* 7 Ill. App.3d 820, 288 N.E.2d 918.

■■ Two witnesses provided identification testimony in the instant case. Nick Markos testified that defendant was in the Sparta Grill for five to seven minutes under "very bright" lighting conditions. Markos gave defendant change twice and observed him remove money from the cash register when the robbery was perpetrated. Joseph Muriullo testified that

he observed defendant run from the grill. The lighting was described as "bright." He observed defendant's face for "a matter of seconds" when defendant was ten to fifteen feet from him. Both witnesses identified defendant in a five-man lineup within an hour after the robbery. Under these circumstances we will not disturb the implicit finding of the trial court that the identification testimony was based upon observations independent of and uninfluenced by any identification procedures utilized by the police.

Defendant finally contends that the sentence imposed was excessive. He argues that his sentence of seven to twelve years in the penitentiary is clearly excessive in view of the fact that his co-defendant, Timothy Williams (who pleaded guilty), received a sentence of five years probation, the first year of which was to be served in the Cook County Jail.

■■ It is well established that imposition of a sentence is within the sound judicial discretion of the trial court and will not be interfered with on review absent an abuse of discretion. Our legislature has indicated that the possibility of rehabilitation is a proper consideration of the court in determining the sentence to be imposed. (Ill. Rev. Stat. 1969, ch. 38, par. 1—2(c).) In the instant case the different sentences imposed upon codefendants were justified inasmuch as the court could properly have determined that Timothy Williams showed greater promise of rehabilitation than defendant. Timothy Williams was eighteen years of age, married, and was cooperative with court and counsel throughout the proceedings. Defendant, on the other hand, was twenty-three years of age and unmarried. He had eight prior convictions between the years 1965 and 1969. The only evidence offered in mitigation was his "youthfulness" and the environment in which he was raised. Under these circumstances we cannot say that the trial court abused its discretion in imposing the sentence that it did.

■■ We further note that modification of the sentence is not required under the sentencing provisions of the Unified Code of Corrections which became effective January 1, 1973. Armed robbery is a class 1 felony (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 18—2) for which the maximum sentence is required to be any term in excess of four years and the minimum term is required to be four years unless the nature of the offense and the history and character of defendant warrant the imposition of a higher minimum term. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1.) In the instant case the history and character of defendant and the nature of the offense justified the sentence imposed.

Accordingly, the judgment is affirmed.

Affirmed.

HAYES, J., concurs.

Mr. JUSTICE LEIGHTON dissenting:

I do not agree with the disposition my brethren make of this appeal. Therefore, I respectfully dissent. In doing so, I want to state the facts that influence my judgment and point out the principles of constitutional and statutory law which compel my conclusions.

## I.

On September 21, 1970 at about 12:30 A.M., defendant was arrested for armed robbery. From that day until January 18, 1971 when he and a codefendant were brought to court for arraignment and trial, he was held in jail. Interrogation at the arraignment revealed that defendant and his codefendant were indigents. Therefore, the Public Defender of Cook County was appointed to represent them. Later in the day, they were before the assigned trial judge. When the case was called, an assistant public defender, a different one than was present at the arraignment, told the court that he was not prepared for trial because his office had just been appointed. No statement was made by the assistant state's attorney; no one said anything concerning the term status of the case. However, the trial judge spoke, saying, "It is my understanding the term runs on the case tomorrow." Then there followed a colloquy in which defendant, apparently speaking for his codefendant, told the court that "[w]e demand trial now."

After the assistant public defender repeated that he was not prepared to defend the case, the trial judge said to the defendants, "You understand, gentlemen, this case came to our courtroom the later hour of four o'clock or thereafter and that the Public Defender who was just introduced to the case and introduced to you, that he is not familiar with your case and not familiar with the defense that you are endeavoring to promote on your behalf [sic]." Defendants, however, insisted on immediate trial. The judge ordered that a panel of prospective jurors be sent to his courtroom. A short time later, interrogation of the jury was begun, continued to the next day and then to January 20, 1971, 121 days after defendant was taken into custody.

That day's proceedings began in the trial judge's chambers where in the presence of the assistant public defender he talked with the two defendants and told them that the day before, in open court, their appointed counsel had said that he was not prepared to defend them because he had not investigated their case and there were witnesses he wanted to interview. The trial judge told the two defendants that they were facing a serious charge; that if they were found guilty, they could be sent to the penitentiary for an indeterminate period of time. "Now by indeterminate, that means any number of years, ten or twenty or

thirty or forty or sixty years * * *." The judge added, "* * * [w]e started the trial and you are on trial, but your counsel had indicated that to serve your best interest he would like to have additional time, but that is entirely up to you and I want you to know that he will have problems in representing you. He has indicated that * * *." Then, after a long conversation in which the two defendants made, but the court rejected, the claim that the 120 days within which they had to be tried had passed, the trial judge inquired whether they would consent to a continuance so that their appointed counsel could prepare defense of their case. Each defendant said that he had been in jail more than four months awaiting trial and that he was insisting on either being discharged or being tried within the 120-day rule. The assistant public defender interrupted the conversation to say that he was not prepared to defend the case. The assistant state's attorney announced that the State was ready. Thereupon, the trial judge ordered selection of the jury to proceed. This was done and continued to the following day.

When court reconvened, there was a conversation between defendants and the trial judge concerning defense motions on which the trial court had not ruled. Two of these were for defendant's discharge on the ground that he had not been brought to trial within 120 days. Defendant requested that the motions be heard before selection of the jury was completed. The trial judge denied the request. In a conversation with the assistant public defender, the trial judge asked how much progress he had made in preparing for defendants' defense. "Do you think that you would be ready to proceed after we complete the motions?" The lawyer replied, "I will give it the maximum effort I can. I cannot tell this court whether I will be or not." In a later conversation, the assistant public defender told the trial judge that defendant had a key witness who had to be located. "Without her I can see where the case for Mr. Williams would be quite damaging." There then followed a conversation in which the trial judge asked the two defendants if they would consent to a continuance so their counsel could prepare their defense. Both defendants refused, insisting that to do so would waive their rights under the 120-day rule. A short time later, the codefendant, through the assistant public defender, informed the trial judge that he wanted to withdraw his plea of not guilty. The court was told that as to him a plea bargain had been reached. Accordingly, the codefendant was admonished, his plea of guilty was accepted and on the recommendation of the State, he was admitted to five years probation, the first year to be served in the Cook County Jail.

Thereafter, selection of the jury continued and was completed that day, Thursday, January 21, 1971. The case was put over until the fol-

lowing Monday, January 25 when, with the assistant public defender waiving opening statement on defendant's behalf, the State's case was heard. The key witness was not located; so defendant testified as the only witness for the defense. After final arguments, the jury on January 26, 1971, received its instructions, deliberated and returned its verdict finding defendant guilty. He was sentenced to a term of not less than seven nor more than twelve years.

## II.

On the day defendant was arrested, our law provided, as it does now, that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *." (Ill. Rev. Stat. 1969, ch. 38, par. 103—5(a).) This law is not a technical one. (*People v. House*, 10 Ill.2d 556, 141 N.E.2d 12.) Its provisions are mandatory; they confer on a defendant a substantial and absolute right. (*People v. Emblen*, 362 Ill. 142, 199 N.E. 281; *People v. Wyatt*, 24 Ill.2d 151, 180 N.E.2d 478.) Unquestionably, a defendant who is not brought to trial as required by this law is entitled to a discharge for want of prosecution. *People v. Markword*, 108 Ill.App.2d 468, 247 N.E.2d 914.

These fundamental principles force me to notice that, for reasons known only to the State, defendant was held in jail 119 of the 120 days within which by law he had to be tried. See *People v. Bryarly*, 23 Ill.2d 313, 178 N.E.2d 326. It has been said that the whole purpose of the constitutional provisions that guarantee the right to a speedy trial, and of our 120-day statute implementing this guarantee, is to prevent a defendant from being kept in jail at the whim of a prosecutor without trial on a pending indictment or information. (*People v. Lowe*, 61 Ill.App.2d 262, 266, 210 N.E.2d 31.) To me, it is clear that on January 18, 1971, after 4:00 P.M., when defendant (with his codefendant) stood before the trial judge, he had been kept in jail at the whim of Cook County prosecuting authorities for such an unreasonable length of time that when brought to court, he was compelled to choose between his statutory right to be tried within 120 days and his constitutional right to counsel. As a consequence of this compulsion, defendant, in the proceedings that resulted in his conviction, was denied the effective assistance of counsel and as a direct result of this fact he was not brought to trial within 120 days as required by section 103—5(a) of the Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1969, ch. 38, par. 103—5(a).

For me, denial to defendant of effective assistance of counsel occurred when he was subjected to a trial while represented by a lawyer who

could not proceed with the defense because he was unprepared. It is true that defendant refused to waive his rights under the 120-day statute. From what defendant said, it appears he was jail-wise. He had learned, through jail-house education, that if the State did not bring him to trial within 120 days of his arrest, he was entitled to his liberty. Spurred by this knowledge, superficial though it was, he insisted on immediate trial. In my judgment, he was right in this insistence. He knew by instinct, if not by learning, that the salutary provisions of the 120-day rule cannot be defeated by technical evasions. (*People v. Fosdick,* 36 Ill.2d 524, 224 N.E.2d 242.) He sensed that these statutory provisions are intended to conserve the liberty of the citizen; that they give effect to the constitutional right to a speedy trial; and that courts must give these provisions a liberal construction. (*People v. Moriarity,* 33 Ill.2d 606, 213 N.E.2d 516; *People v. Matson,* 129 Ill. 521, 22 N.E. 456.) It was the sworn duty of everyone in that courtroom, the trial judge and the assistant state's attorney, to recognize that "[p]ractices in prosecution which result in compelling, or in seeking to compel, the waiver of constitutional and legislative requirements are unfair in the administration of justice." *People v. Rice,* 109 Ill.App.2d 212, 218, 248 N.E.2d 332.

I regret to observe that this precept was not recognized. Instead, the trial judge, without being asked by the State, resorted to a theory that finds support in two of our decisions in which by dicta we said that a jury criminal trial begins when selection of the jury commences. See *People v. Scott,* 63 Ill.App.2d 232, 211 N.E.2d 418; *People v. Bey,* 133 Ill.App.2d 250, 272 N.E.2d 726. In pursuit of this theory, the trial judge brushed aside defendants' request for pretrial proceedings and rulings on pretrial motions, a request they had a right to make. See *People v. Nunnery,* 54 Ill.2d 372, 297 N.E.2d 129. He called for a panel of prospective jurors. After he had oriented them on the occasion for their being in his courtroom, the trial judge asked, "Does either counsel want to move that we recess until tomorrow morning? We are on trial." The only one to respond was the assistant state's attorney who said, "I have no opinion."

The judge's obvious invitation for one of the lawyers to request a continuance was not accepted. Therefore, he said, "Very well, we will start interrogating the jurors." This was done. The interrogation went on for the next three days and selection of the jury was completed on January 21, 1971, 122 days after defendant was taken into custody. For three consecutive days after defendant was brought to court, his appointed counsel expressed inability to represent him at his trial. On each occasion, the trial judge used these representations to importune defendants into waiving their rights under the 120-day rule in order that the assistant

public defender could prepare for trial. In my judgment, these efforts to compel waiver of constitutional and legislative requirements of a criminal trial were unfair.

They were also unnecessary. There is reason to believe that had the trial judge given defense counsel time to prepare for trial, at the expense of defendants' rights under the 120-day statute, his ruling would have been correct. For example, in *People v. Carr*, 9 Ill.App.3d 382, 292 N.E. 2d 492, we held that when a defendant in court with his lawyer demands immediate trial so as to compel compliance with requirements of a speedy trial, but the lawyer requests a continuance so he can prepare for trial, it is not a violation of the 120-day rule for the trial judge, to grant the lawyer's request and refuse defendant's demand. Evidently, with a case like this one in mind, we said in *Carr* that "[i]f the court had acceded to defendant's demands, and had defendant been found guilty, the question would surely have arisen as to whether defendant had been denied the effective assistance of counsel who had stated that he was not prepared to defend." 9 Ill.App.3d 382 at 384.

The question arises in this case. In my judgment the only answer is that when the initial consultation between a court-appointed attorney and his client occurs only a short time before the trial, in the absence of clear proof that no prejudice resulted, we should be obliged to treat the lawyer's representation as inadequate and the trial as falling short of the standards of due process guaranteed by the Fourteenth Amendment. (*Turner v. Maryland* (4 Cir. 1963), 318 F.2d 852, 854; compare *Twiford v. Peyton* (4 Cir. 1967), 372 F.2d 670.) In this case, I will not limit my study of the record to the caliber of the assistant public defender's performance when evidence was presented to the jury. The right to effective assistance of counsel applies to every stage of a criminal case. (*People v. Noble*, 42 Ill.2d 425, 248 N.E.2d 96; *People v. Vesley*, 86 Ill.App.2d 283, 229 N.E.2d 886.) Therefore, I look to the jury selection during which defendant's court-appointed counsel was protesting his inability to undertake defense of the case. Selection of the jury is an important part of a criminal trial. It is the way by which a fair and impartial jury is obtained. (See *People v. DeLordo*, 350 Ill. 148, 182 N.E. 726; *People v. Goehringer*, 196 Ill.App. 472.) The lawyer who participates in that selection must know the case of the side he advocates. It is difficult for me to believe that a lawyer who, for lack of preparation, is unable to undertake the defense of a criminal case is competent to select a jury to try the accused.

In any event, as did the trial judge, I will take the word of the assistant public defender that he was not prepared to undertake defendant's defense. "The right to have the assistance of counsel is too funda-

mental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (*Glasser v. United States* (1942), 315 U.S. 60, 76, 86 L.Ed. 680, 62 S.Ct. 457, 467; *United States v. Koplin* (7th Cir. 1955), 227 F.2d 80.) Therefore, I conclude, and would so hold, that in the proceedings that resulted in his conviction, defendant was denied the effective assistance of counsel and thus was deprived of due process of law.

This conclusion brings me to the question whether defendant was brought to trial within 120 days. This question is implicit in the issue which defendant presents for our review. Its answer rests on fundamentals of the system by which in this State we administer criminal justice.

As I understand this system, a person in custody for an alleged offense is brought to trial within the provisions of the 120-day statute when trial begins before a criminal court that is organized in accordance with law and having power to proceed to determine his guilt or innocence. (*People v. Jonas,* 234 Ill. 56, 84 N.E. 685.) My knowledge of the law tells me that in this system, a criminal court cannot proceed to try an indigent defendant for armed robbery without appointing counsel for his defense, unless there is a knowing and intelligent waiver of the right to counsel. (U.S. Const. amend. VI; Ill. Const. art II, sec. 9 (1970); Ill. Rev. Stat. 1969, ch. 38, par. 113—3(a); Supreme Court Rule 401(b), Ill Rev. Stat. 1969, ch. 110A, par. 401(b); *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792; *People v. Chilikas*, 128 Ill. App.2d 414, 262 N.E.2d 732.) These constitutional and statutory requirements are not satisfied by the perfunctory appointment of a public defender. See *Avery v. Alabama*, 308 U.S. 444, 84 L.Ed. 377, 60 S.Ct. 321; *People v. De Simone*, 9 Ill.2d 522, 138 N.E.2d 556; 21 Am.Jur.2d, Criminal Law § 319.

In this case, it is important to notice that when defendant was brought to court on the 119th of the 120 days within which the State was obliged by law to try him, an assistant state's attorney was present. He knew the nature of the case and the seriousness of the charges. He had the list of witnesses, the schedule of the evidence and he had some idea of the length of time the trial was going to require. In fact, he was the only person who could tell whether it was true that the assistant public defender was unable to undertake defendant's defense. Yet, the assistant state's attorney said nothing. He accepted as true the public defender's representation that he could not undertake the defense. It appears, then, that through its duly authorized officials, the State knew it had caused an unexplained and unreasonable delay in bringing defendant to court and that it had initiated a proceeding in which, more than 120 days after

his arrest, defendant was denied effective assistance of counsel. In my judgment, affirmance of this conviction puts our stamp of approval on a dangerous technique of oppression. Persons charged with serious crime can be held in jail at the whim of a prosecutor, and then with calculated delay, be brought to court in a way that will effectively nullify both the right to a speedy trial and the right to effective assistance of counsel. The State, with our approval, should not be allowed to develop this technique.

Therefore, I conclude that because, within the time required by law he was not brought before a court and furnished with effective counsel, defendant was not brought to trial within 120 days. His timely motion for discharge on that ground, a motion on which the trial court did not rule, should have been granted. For these reasons, I would hold that his conviction should be reversed; and by an order entered in this court, I would order him discharged from custody as the only possible remedy for the deprivation of his right to a speedy trial.