The People of the State of Illinois, Plaintiff-Appellee, *v.* Silas Walker *et al.* (Impleaded), Defendants-Appellants.

(Nos. 59065, 59069 cons.;

First District (5th Division)—June 13, 1975.

James J. Doherty, Public Defender, of Chicago (Terrence McQuigg and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants, along with Raymond Morales and Larry Linsey, were indicted for armed robbery in violation of section 18—2 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 18—2.) After a jury trial, defen-

dants were found guilty and sentenced to imprisonment for not less than 5 nor more than 15 years. On appeal, defendants contend that: (1) the trial court erred in denying their motion to suppress a witness' identification testimony that resulted from a suggestive racially mixed line-up, (2) the prosecution's closing argument undermined defendants' presumption of innocence and thus deprived them of a fair trial, (3) the sentences imposed were excessive.

The defendants do not challenge the sufficiency of the evidence and the facts may be summarized as follows:

On December 31, 1971, at approximately 4 P.M., three men, later identified as Silas Walker, Joseph Walker and Raymond Morales entered Nosal's Market at 5536 S. Ashland, Chicago, Illinois. Louis Nosal, owner of the store, was behind the counter, waiting on Louis Wappel. Jean Nosal, the owner's wife, was in a cashier's cage at the rear of the store. No one else was in the store. The men appeared to be waiting for service and after approximately 5 minutes, Silas Walker walked to the rear of the store to take a number. Suddenly, all three men produced guns. Silas Walker placed a gun in Jean Nosal's side and instructed her to walk behind the counter and lie down. Joseph Walker pointed a gun at Louis Wappel, searched his pockets and then instructed him to move behind the counter and lie down. Raymond Morales walked behind the counter, placed a gun at the back of Louis Nosal's head and instructed him to lie down. All three victims complied with the instructions. Silas Walker rifled the cashier drawer and then all three men fled. The gunmen were bareheaded and made no attempt to cover their faces. $2,000 was taken from the market and $190 was taken from Louis Wappel.

At the hearing on plaintiff's motion to suppress identification testimony, Chicago Police Department Investigator John Markham testified that on December 31, 1971, he was assigned to investigate the robbery at Nosal's Market. A bystander told Markham that he had seen three men run out of the store and get into a car. The bystander had marked down the license number and Markham remembered stopping the same car 2 days previously for a traffic violation. Larry Linsey had been driving the car and Joseph Walker and Silas Walker were passengers. Two days after the robbery, Markham showed a group of photographs to Louis Wappel, who positively identified Silas Walker and tentatively identified Joseph Walker. On January 8, 1972, Markham arrested the Walkers.

Markham further testified that the Walkers, who are black, along with Raymond Morales, a Puerto Rican, were placed in a lineup consisting of five whites and five blacks. Louis Wappel viewed the lineup and positively identified Silas Walker and tentatively identified Joseph Walker, but was unable to identify Morales. Lastly, Markham testified that ap-

proximately 2 weeks after the robbery, he showed the lineup photographs to Jean Nosal, who had been out of town at the time of the lineup. She positively identified both Walkers, but was unable to identify Raymond Morales.

Louis Wappel testified that at the time of the robbery he had an opportunity to view the robbers for about 5 minutes. He corroborated Markham's testimony as to his photograph and lineup identification. Wappel also testified that at the preliminary hearing he had repeated his positive identification as to Silas Walker and tentative identification of Joseph Walker.

Jean Nosal testified that the robbers had remained in the store for about 7 minutes and that she had ample opportunity to view them. She corroborated Markham's testimony as to her positive identification and further testified that she had positively identified both Walkers at the preliminary hearing.

At trial all three victims testified as to the events of the robbery and Jean Nosal and Louis Wappel positively identified both Walkers as the robbers. Louis Nosal could not identify any of the gunmen. Markham basically repeated his testimony from the motion hearing.

Larry Linsey testified for the State that he was the driver of the getaway car and William Oswald testified for the State that he was the bystander who gave Investigator Markham the license number.

Joseph and Silas Walker testified on their own behalf that on December 31, 1971, they had attended a family get-together with approximately 15 people at their mother's house; that they had not left the house from 1 P.M. until 1 A.M. the next morning. Robert Carter, Betty Carter and Marie Cunningham each testified for the defense that both Walkers had attended the get-together and corroborated the brothers' testimony.

OPINION

■■ Defendants contend that the court erred in not suppressing the identification testimony of Louis Wappel. Defendants argue that the racially mixed lineup and the fact that all the black men were not of the same size is so suggestive as to deprive them of their due process rights. It is well established that identification evidence will be suppressed only when the procedures employed are so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification. (*People v. Jones*, 7 Ill.App.3d 820, 288 N.E.2d 918; *People v. Williams*, 14 Ill.App.3d 572, 303 N.E.2d 575.) All the circumstances bearing on a pretrial identification must be considered because even though a lineup is suggestive, identification testimony that has an independent basis in fact is still admissible. (*People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d

152.) Louis Wappel viewed the defendants for 5 minutes, under a bright light and in close proximity. His identification through photographs *prior* to the lineup is sufficient evidence that his identification testimony had the necessary independent basis and thus the trial court properly denied defendants' motion.

■■ Defendants next contend that two parts of the State's closing argument implied that defendants had a burden of producing evidence, thus undermining the presumption of innocence and deprived them of a fair trial. Supposedly, the prosecutor stated that defendants were obligated to produce certain witnesses and the witnesses had not testified because they feared committing perjury. A search of the record finds no such statement. The prosecution *did* comment that while defendants claimed 15 or 16 people, including their parents, had attended the family get-together only three testified. When a defendant offers alibi testimony that he was with certain people at the time of the crime and some but not all the people testify, the failure to produce such witnesses is proper comment for the State. *People v. Gray*, 57 Ill.App.2d 221, 206 N.E.2d 821.

■■ Defendants' other argument on this point concerns an anecdote related by the prosecutor wherein a juror in a prior case held out for acquittal. A guilty verdict was eventually entered and the prosecutor questioned the jury foreman concerning the reluctance of the lone juror. The foreman stated, "Legally you can be presumed innocent or you can be presumed to be Jesus Christ himself. That don't change the fact he did it." Just prior to the remark, the prosecutor had stated the basic definition of the presumption of innocence and it appears that he was attempting to infer that while the defendants are presumed innocent, they are not presumed innocent per se. Here, the evidence of guilt was overwhelming and whatever the effect of the remark, it did not deprive defendants of a fair trial. While a prosecutor's remarks may be subject to criticism, unless they constitute a major factor in the conviction, they are not grounds for reversal. *People v. Brown*, 132 Ill.App.2d 302, 270 N.E.2d 501.

■■ Lastly, defendants contend that their sentences were excessive and that they received the greater sentences because they exercised their constitutional right to a jury trial. They point out that Raymond Morales, an equally involved codefendant, waived a jury trial, offered no defense testimony and received a lesser sentence of 5 to 6 years. Defendants fail to note that the trial court specifically stated that because the brothers had lied in their testimony, they showed a lesser potential for rehabilitation and thus would receive a greater sentence. It is well established that the potential of rehabilitation is a proper criterion in the determination

of sentence (*People v. Williams*, 14 Ill.App.3d 572, 303 N.E.2d 575), and thus the sentence imposed was justified.

Accordingly, the judgment is affirmed.

Affirmed.

BARRETT, P. J., and SULLIVAN, J., concur.