**People of the State of Illinois, Plaintiff-Appellee, v. Marvin L. Bond, Defendant-Appellant.**

Gen. No. 67–49.

Third District.
September 18, 1968.

William Bailey, of Rock Island, for appellant.

Richard Stengel, State's Attorney of Rock Island County, of Rock Island, for appellee.

ALLOY, P. J.

Defendant Marvin L. Bond was convicted by a Rock Island County jury on January 27, 1967, of the crime of attempted murder. He appeals to this Court from the conviction and sentence which resulted.

The evidence in this cause indicates that early in December, 1966, Sammy Bell told defendant Bond that he saw a man named Tony Badillo dancing with Bond's wife. A few days thereafter, on December 4, 1966, defendant Bond found Tony Badillo in Tony's home. He forced him at gunpoint to go to Bond's home. The evidence disclosed that Bond used his gun to strike Tony about the face. He then forced Tony at gunpoint to go to the Avalon Tavern about 2:00 o'clock in the afternoon, but after Bond threatened the life of Tony, Tony got away when Bond went into a washroom. There was some evidence that Bond stated that he would take care of Bell because of what Bell might tell about what Bond had done or would do to Tony. At about 3:30 in the same afternoon of December 4, 1966, defendant Bond went to the home of Sammy Bell and found Bell seated in a car in the back of his house. Evidence disclosed that Bond got into the car with a gun in his hand and told Bell, "I'm going to blow your damn head off." Bell testified that defendant Bond then struck him and shot him in the head with the gun which Bond was carrying. He also testified that he had known Bond for about six months and that Bond was then wearing a blue ski jacket.

Other witnesses corroborated that Bond was wearing the clothing described at the time and that they saw defendant Bond the afternoon of December 4 with a gun (from testimony of two witnesses who drove Bond to the

48

Bell house). Susan Pittard and Dennis Schneekloth met Bond shortly after they left him at Bell's house and Bond gave his gun to Susan Pittard and told her to get rid of it. Bond also told her that he thought he had killed Sammy Bell. Another witness testified that he saw a man with a blue ski jacket in Sammy Bell's car around 3:30 p. m. on the afternoon of December 4. Bond was wearing a blue ski jacket when he was arrested and six .25 automatic shells were found in his pocket. Following his conviction by the jury, Bond was sentenced to the penitentiary for not less than 15 nor more than 20 years.

On appeal to this Court, defendant Bond contends that (1) the trial court committed reversible error in refusing to allow defendant Bond a continuance; (2) in allowing the testimony of witnesses whose names were given to defendant's attorney just prior to trial; and (3) in allowing testimony in detail of the battery committed by Bond upon Tony Badillo prior to the attempted murder of Sammy Bell.

The attorney who defended Bond was appointed to represent him on January 6, 1967, and trial was set for 17 days after such date. It was contended by the attorney that during this 17-day period he had to contact 32 witnesses and prepare and argue three motions in the case. He also contended that on the day of the trial he was notified of six additional witnesses and he then moved orally for a continuance, which was denied. Such attorney also argues that he had no assistance from defendant himself as defendant was not able to make bond.

■■ The basic principle involved on the issue of the request for a continuance is one which, in essence, determines whether defendant has received a fair trial and if his attorney in a criminal case is given sufficient time in which to prepare for trial (People v. Blumenfeld, 330 Ill 474, 489, 161 NE 857). The court, in the Blumenfeld case referred to, pointed out that the right of the accused to appear by counsel includes reasonable time for

49

counsel to prepare the defense. It is pointed out that the constitutional guarantee that an accused shall have assistance of counsel is not a barren right and that defendant should not be deprived of it by compelling counsel to go to trial unprepared and without a reasonable opportunity of studying the case. It is pointed out in the Blumenfeld case, supra, that defendant's right to have counsel and have his counsel prepare his case for trial is a substantial right and that to deny counsel sufficient time in which to prepare the case is a denial of a substantial right; that if defendant is not given enough opportunity to prepare for trial, the trial becomes a farce.

At the same time it is noted that the question of whether defendant's attorney needs more time to prepare for trial rests within the discretion of the trial judge and the determinations of such trial judge should be upheld unless there is evidence of an abuse of such discretion. It is only where the trial court has abused its discretion in denying a reasonable time for preparation of the defense, that a court of review will interfere with the trial court's action in denying a motion for a continuance (People v. Celmars, 332 Ill 113, 163 NE 421). We have uniformly held that the ruling on a motion for a continuance is a matter resting in the sound judicial discretion of the trial court and will not be disturbed, on review, unless it is shown that the discretion has been abused.

Whether there has been abuse of discretion necessarily depends upon the particular facts in each case (People v. Singer, 288 Ill 113, 123 NE 327; People v. Van Norman, 364 Ill 28, 2 NE2d 891). In the case before us, the attorney waited until the day of the trial before he made his oral motion for a continuance assigning as his only grounds the fact that with his other legal work he just did not have time to adequately prepare the defense. There was no affidavit or statement as to any

50

particular matters which had kept him occupied during the period before trial except the mention of the three motions argued in the instant case. It is apparent that if the attorney could see that he was running short of time, he could have sought his continuance earlier or at least specified in his motion with affidavits, the specific reasons for a continuance when made on the day of the trial. The circumstance that he was served with the names of a few new witnesses on the day of the trial, would not automatically give the defendant a right to a continuance, in view of the fact that the State's Attorney offered to have these new witnesses available to defendant's attorney to question whenever he wished to talk with them. On the basis of the record before us, therefore, it is apparent that we would not be justified in finding that the trial judge abused his discretion in refusing the continuance (People v. Ritcheson, 396 Ill 146, 71 NE2d 30). We note also that the attorney who represented the defendant had actually represented defendant at the preliminary hearing in the month of December, 1966, and did not first learn of the case when he was appointed, 17 days before trial.

 Defendant's contention that the court erred in allowing three certain witnesses to testify (on the basis that defendant did not have proper time to investigate such witnesses), in our judgment, on the record, would not justify a reversal. One of the witnesses, Opal McLaughlin, testified that her husband gave Bond the gun involved in the crime approximately four months before the alleged attempted murder. Her testimony was objected to because her name was not furnished to the defendant prior to the morning of the trial. The testimony of Opal McLaughlin was no surprise to defendant as the defendant himself testified that this is where he obtained the gun. The State's Attorney also offered to allow defendant's attorney to question this witness before the jury was selected. Under the law of this

51

State it is consistently held that the discretion reposes in the trial court to permit witnesses to testify notwithstanding the absence of their names in the list of witnesses furnished by the State and unless defendant can show he has been prejudiced by surprise or otherwise, the trial court's exercise of such discretion will not be disturbed upon review (People v. Martin, 74 Ill App2d 431, 221 NE2d 13).

 The second witness to which defendant objected involved the testimony of a pawnbroker with whom Bond had pawned the gun in question. This was also no surprise to defendant and again the attorney for defendant was given an opportunity to question the witness before trial. The final witness to whom objection was made, testified that he helped dismantle the gun and throw it away. The name of this witness came up during the course of the trial and it was the first time that the State learned of the name of such witness. There was no surprise alleged by defendant here since he knew this witness personally and also knew what the witness would testify to if called. Since none of these witnesses were actually eyewitnesses to the crime, their testimony was mainly corroborative and cumulative and would not justify a reversal on the grounds alleged.

 The question with which we were most concerned revolves about the detailed proof which the State's Attorney made of the alleged battery committed by Bond upon Tony Badillo, an hour and a half before the attack upon Sammy Bell. The assault upon Tony by defendant Bond was a separate act and crime and Bond had been charged with the crime of battery against Tony, but the charge was dropped. Even though there was a sequence connection between the actions of Bond when he struck Tony and his attack upon Bell one and a half hours later, they were in fact two separate offenses. Ordinarily, evidence that defendant has committed another crime whol-

ly independent of or disconnected from the one for which he is being tried would not be admissible (People v. Brewer, 355 Ill 348, 189 NE 321). There are exceptions to the rule which revolve around the fact that if there are peculiar and distinctive features common to the crimes committed it would not be improper to admit the testimony (People v. Lehman, 5 Ill2d 337, 343, 125 NE 2d 506). The question in such case is whether defendant's conduct evidenced a peculiar plan to commit a particular offense and the courts in such cases do not exclude the conduct occurring subsequently or prior to the act for which a defendant is being tried. In the case of People v. Carter, 38 Ill2d 496, 232 NE2d 692, evidence of a previous attack upon a Miss Lavery was admitted at a trial of a defendant for the murder of one Lorraine Brownstein. In that case the court stated that although the court recognized that evidence showing commission of a separate offense unrelated to the crime charged ordinarily should not be received, if such evidence tends to prove any fact material to the issue being tried it is properly admissible. The court found that the testimony concerning the attack on Miss Lavery tended to establish the identity of the weapon used in the Brownstein murder and its owner. The court found that defendant's conduct in connection with the Lavery attack was similar in significant respects to his conduct in connection with the Brownstein murder and indicated a common design and was admissible as an exception to the rule prohibiting evidence of a crime other than that for which defendant is being tried. Similar conclusions have been reached in other cases, as in People v. Brown, 26 Ill2d 308, 186 NE2d 321, where a robbery occurring six days prior to the offense for which the defendant was being tried was admitted. On the basis of such precedents the admission of evidence of the attack upon Tony Badillo would tend to show the motive involved and proof of the

fact that defendant Bond had a gun and was dressed in certain clothes which he was wearing at the time of the attack on Sammy Bell.

We feel, however, that the prosecution, in introducing, in great detail, evidence of the battery which was described including pictures of Tony Badillo showing his battered face, was introducing evidence which was unnecessary. It would have been sufficient to show, through the witness Tony Badillo, that he saw Bond with a gun at the time in question, that Bond struck him, and also that he observed the clothing which Bond was wearing. Going further into description of the physical condition of Tony Badillo was not essential to the case for the People. While such evidence was not proper, under the facts as disclosed by the record and the evidence in this cause, we do not believe we would be justified in reversing by reason of such evidence, particularly in view of evidence in the record of a common plan by Bond as to the assault on Tony prior to the shooting of Bell. We believe that this case is analogous in this respect, to the case of People v. Cione, 293 Ill 321, 333–334, 127 NE 646, where the court concluded that detailed evidence of a robbery should not have been admitted into evidence but that, in view of the facts in the record, the jury could not have been influenced to reach the verdict it did because of other evidence relating to the crime which was presented in the case.

Since we find no reversible error in the record, the judgment of the Circuit Court of Rock Island County will, therefore, be affirmed.

Affirmed.

STOUDER and CULBERTSON, JJ., concur.