(No. 45064.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MAJOR NUNNERY, Appellant.

*Opinion filed June 4, 1973.*

GERALD W. GETTY, Public Defender, of Chicago (ROBERT M. GRAY and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and BERNARD CAREY, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Major Nunnery, was indicted in the circuit court of Cook County on three charges of armed robbery. Upon allowance of his petition based upon the 120-day rule (Ill. Rev. Stat. 1967, ch. 38, par. 103—5), defendant was discharged. The People appealed, the appellate court

reversed and remanded the cause for trial (*People v. Nunnery, 4 Ill. App. 3d 217*), and we granted defendant leave to appeal.

The record shows that on February 9, 1969, defendant was arrested on charges of armed robbery, presumably the same offenses for which he was later indicted. On May 27 two indictments were returned against defendant; one, containing two counts, charged him with having committed two separate armed robberies on February 9, 1969, and the other, in one count, charged him with having committed an armed robbery on January 22, 1969. The indictment charging the offense of January 22 and one of the counts charging an offense on February 9 named the same victim. On June 4, 1969, defendant was arraigned, the court, on its own motion, appointed the public defender to represent him on all three charges, and he entered a plea of not guilty. At the arraignment the public defender filed a written motion for discovery containing 21 paragraphs, moved orally for reduction of defendant's bond, and that the People make "an election." It is not clear from the colloquy which followed precisely what election defendant requested be made, and we shall not engage in conjecture as to whether it concerned electing which case to try first, or whether there was some problem as the result of the same victim's being named in two indictments charging separate offenses on different dates. Defendant had been incarcerated since his arrest on February 9. The motion to reduce bond was denied, the motion for discovery was allowed as to several paragraphs, denied as to others, and after hearing brief oral argument on the paragraphs remaining, the court indicated it would reserve its ruling on those points to give the People an opportunity to respond to them. The requests for discovery on which the court reserved its ruling concerned whether, when, by whom, and under what circumstances defendant had been identified. Although not entirely clear, we conclude from the colloquy between court and counsel

that although the assistant State's Attorney did not concede that defendant was entitled to the information requested, he desired to ascertain whether and by whom identifications had been made and there might then be an objection to making disclosure to the defendant. The following colloquy then occurred:

"COURT: How much time would you like?

DIVANE (Assistant State's Attorney): Whatever date you set for the case.

COURT: Is there any term situation here?

DIVANE: There is one, your Honor, six weeks hence.

COURT: Set this for June 12th. Make that without subpoenas."

On June 12, 1969, defendant filed a petition for discharge, and after several continuances granted upon the request of the People, on July 11, 1969, the petition was heard and allowed, defendant was discharged and the People appealed.

In reversing the judgment of the circuit court, the appellate court held that although the delay in the indictment and arraignment could not be attributed to defendant, his filing of the discovery motion on the 115th day tolled the running of the 120-day period and that a new 120-day period started at the end of whatever period of delay resulted from his filing the motion.

Defendant contends that the appellate court's decision forced him to elect between his constitutional right to a speedy trial and his right to pretrial discovery, thus depriving him of due process of law; that the record shows that defendant's motion did not cause any delay, and that the decision served to create "an invidious classification of defendants based on wealth," and denied him equal protection of the law.

The controlling question in determining if the defendant was entitled to discharge under the 120-day rule is whether the delay of the trial beyond 120 days was

"occasioned by the defendant," and if answered affirmatively, he was not entitled to discharge. "In determining this question, the criterion in each case is whether the defendant's acts in fact caused or contributed to the delay. In the varied fact situations that involve the 120-day rule, we have carefully examined the facts to prevent a 'mockery of justice' either by technical evasion of the right to speedy trial by the State, or by a discharge of a defendant by a delay in fact caused by him." *People v. Fosdick, 36 Ill.2d 524, 528-29.*

In *People v. Aughinbaugh, 53 Ill.2d 442,* in holding that the delay in retrial of the case following a mistrial ordered on defendant's motion was unreasonable and served to deny him his right to a speedy trial, we said: "In *People v. Gilbert (1962), 24 Ill.2d 201, 204,* we spoke to the effect of a mistrial upon the statutory provisions regarding speedy trial: 'Our decision in this case does not mean that in every instance of a mistrial, the full statutory period begins to run anew, regardless of the length of time that has already elapsed. The overriding consideration is the constitutional right to a speedy trial, and where delay is not attributable to the defendant, that right is not measured by aggregating successive periods of four months each.' (Also see *People v. Olbrot (1971), 49 Ill.2d 216, 220, cert. denied (1972), 406 U.S. 924, 32 L. Ed. 2d 124, 92 S. Ct. 1792.*) We must therefore examine the record in its totality to determine whether this defendant was afforded his right to a speedy trial. While we are not persuaded that defendant's objection to the November venire was not a delay attributable to him, neither are we convinced that the delay following availability of a new venire was justifiable. *** Viewing the circumstances of this case in their entirety, we find this unexplained delay clearly unreasonable." 53 Ill.2d 442, at 446-447.

The record contains no explanation of why defendant's arraignment and the appointment of counsel were delayed until he had been incarcerated for 115 days.

Clearly he was entitled to discovery (*People v. Flowers, 51 Ill.2d 25*), and if, as is now contended, the People were ready for trial within the 120-day period, the information which the court ordered the People to produce could have been given defendant promptly and the court advised immediately as to the People's position with respect to the paragraphs of the motion on which the ruling was reserved. Furthermore, it was the State's Attorney who erroneously advised the court that the statutory period would not run for 6 more weeks, and nothing in the record indicates that defense counsel, appointed that day, knew when the defendant was arrested and how long he had been in custody. Upon consideration of all of the circumstances we conclude that the delay was not occasioned by the defendant and the circuit court did not err in discharging him. For the reasons stated the judgment of the appellate court is reversed, and that of the circuit court is affirmed.

*Appellate court reversed; circuit court affirmed.*