The People of the State of Illinois, Plaintiff-Appellee, v. Freddie Lee Lott, Defendant-Appellant.

(No. 74-53; ▮)

Third District—November 28, 1975.

ALLOY, J., dissenting.

Robert Agostinelli and James Geis, both of State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (Bernard Rivkin and James Hinterlong, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial in the circuit court of Rock Island County, the defendant, Freddie Lee Lott, was convicted of armed robbery.

On this appeal, the defendant contends the trial court committed error when it denied his motion for discharge under the four-term rule (Ill. Rev. Stat., ch. 38, par. 103—5(a)) and his motion to suppress evidence.

The defendant was arrested and incarcerated on April 19, 1973. The grand jury returned a one-count indictment of armed robbery against him on May 8, 1973. The defendant remained in custody until his trial on August 27, 1973.

On August 20, 1973, the defendant moved for discharge, alleging that the State had failed to comply with the speedy trial requirement. After a hearing was held, the motion was denied.

The defendant relies upon section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, par. 103—5(a)) which provides that:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *."

The defendant filed numerous pretrial motions. Because of the view which we take of this case, we need not recite the entire proceedings before the trial court.

On May 30, 1973, the defendant moved to suppress evidence. On June 1, 1973, during a hearing on another motion, the People provided the defendant with a report, previously requested, of the arresting officer who had searched defendant's automobile. The defendant indicated that he was ready to proceed on the motion to suppress. The People were also ready to proceed, but the court could not hear the motion because of other scheduled matters. As a result, defense counsel requested the prosecution to set a hearing on the motion, since the People would have to assemble the witnesses. Defense counsel included a similar request, on June 5, 1973, in an unrelated answer filed with the court. No hearing date was set by the prosecution and so the defendant set a hearing date on July 16, 1973 for August 3, 1973. (Although the motion was actually heard on July 26, 1973, that factor would not change the result we reach.)

■■ The controlling question in determining if the defendant is entitled to discharge on the 120-day rule is whether the delay of the trial beyond 120 days was occasioned by the defendant. If the delay is attributable to the defendant's actions, he is not entitled to discharge. The criterion in each case is whether the defendant's acts in fact caused or contributed to the delay. The purpose of the rule is to prevent a "mockery of justice" either by the State's technical evasion of the right to speedy trial, or by the defendant's discharge after a delay in fact caused by him. *People v. Nunnery*, 54 Ill.2d 372, 297 N.E.2d 129; *People v. Fosdick*, 36 Ill.2d 524, 224 N.E.2d 242.

Where the defendant causes delay, the 120-day period is tolled and begins to run anew from the date to which the cause is continued. *People*

*v. Gulick*, 7 Ill.App.3d 427, 287 N.E.2d 727; *People v. Cornwell*, 9 Ill. App.3d 799, 293 N.E.2d 139; *People v. Ellis*, 4 Ill.App.3d 585, 281 N.E.2d 405.

Since the time between the defendant's arrest on April 19, 1973, and the trial on August 27, 1973, only slightly exceeded 120 days, if the defendant was responsible for the delay, he would not be entitled to discharge under the statute. *Cf. People v. Leonard*, 18 Ill.App.3d 527, 310 N.E.2d 15.

██ Under section 114—12 of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, par. 114—12), the defendant has the primary responsibility for establishing the factual or legal basis for a motion to suppress. The defendant knew that a disposition of this motion would necessitate some delay. Over a month and a half elapsed before the defendant set a hearing on this motion. In response, the defendant urges that he requested the prosecution to set a hearing date, since the People would have to assemble the witnesses. The defendant's consideration in attempting to avoid inconvenience to witnesses does not relieve him of the responsibility of having his pretrial motion heard. (*People v. Stock*, 56 Ill.2d 461, 309 N.E.2d 19.) The defendant cannot, by such an assertion, attribute blame to the prosecution for failing to set a hearing date with respect to a matter for which he was primarily responsible. (See *People v. Ross*, 132 Ill.App.2d 1095, 271 N.E.2d 100.) We hold, therefore, that the defendant was responsible for the delay occasioned by the motion to suppress evidence.

We are mindful of the recent opinion in *People v. Lewis*, 60 Ill.2d 152, 330 N.E.2d 857, in which the Supreme Court declined to reinterpret the 120-day rule to exclude from the computations any delays occasioned by the defendant. We note also that the record in the case at bar demonstrates several instances of delay attributable to the State. Nevertheless, the authorities dictate the result we reach.

Having found that the trial court properly denied the defendant's motion for discharge, we must consider the ruling on the motion to suppress evidence.

On April 18, 1973, at approximately 10 P.M., an armed robbery of a service station was reported to the Rock Island Police. The complaining witness, an attendant at the station, described the offender as a black man with a bayonet, wearing a blue denim coat, blue jeans, black shirt and a black hat.

Early the following morning, at 2:30 A.M., the defendant was driving a vehicle heading west on Blackhawk Road in Rock Island. State Trooper Terry Vujakovich, approaching from the opposite direction, noticed that defendant's vehicle was proceeding at five miles per hour, considerably

below the minimum of 35 or 45 miles per hour. The trooper turned his vehicle around and stopped defendant, pulling him over into a driveway. Vujakovich noticed there were no license plates on the car. Upon inquiry, the defendant stated that something went wrong with the gas pedal. The defendant was unable to produce a driver's license when requested to do so by the trooper. The defendant stated that he had left it in his other pants and that it had expired in January. Defendant also stated the car belonged to one Lynn Brooks. At this point, the trooper arrested defendant and removed him to the police car.

The State trooper called in for a driver's license check. While waiting for the reply to the license check, the trooper walked to defendant's vehicle and flashed a light on the "license applied for" sticker, located on the front windshield on the passenger side. While viewing the sticker, he noticed an object on the floorboard underneath the front seat on the passenger side. A coat covered the object but about one-half of a handle was visible.

At this time Corporal Robinson arrived on the scene to determine if assistance was needed. Corporal Robinson checked the sticker and observed the object in the car. At the same time, Trooper Vujakovich opened the car door and Corporal Robinson reached in and picked up the object, a bayonet. The officers then advised defendant that he was under arrest for a weapons charge and escorted him to the Rock Island County Jail.

After conferring with detectives who were investigating the service station robbery, Trooper Vujakovich procured a warrant to search the car defendant had been driving. In the course of this search, the trooper seized a black hat and a wig.

On May 8, 1973, the grand jury returned a one-count indictment of armed robbery against defendant.

The defendant contends that the trial court erred in denying a motion to suppress evidence seized pursuant to the warrantless search. The defendant further urges that the evidence seized pursuant to the warrant should have been suppressed as "fruits of the poisonous tree."

In response, the People maintain that no search occurred, since the bayonet was in plain view when the trooper seized it. Alternatively, the People contend that, even if a search did occur, here the search falls into one of the recognized exceptions to the warrant requirement.

Trooper Vujakovich, while flashing his light on the "license applied for" sticker, observed what he described in his police report as "something sticking out under the seat."

A review of Trooper Vujakovich's testimony at the suppression hearing and at the trial is necessary to properly consider these arguments.

At the hearing on the motion to suppress Trooper Vujakovich testified that, while flashing his light on the sticker, he saw "something" which he believed to be a weapon of some sort. The trooper conceded that he could not see what it was. He further conceded that he only had suspicions and beliefs and no "hard facts" upon which to base such beliefs. The trooper admitted that he could not identify the object as a bayonet until his partner had pulled it out of the car. The trooper did not connect the defendant with the armed robbery until the defendant was taken to the county jail.

At the suppression hearing the following colloquy took place:

"Q. Where was the 'something' you spotted?

A. The 'something' I spotted was on the floorboard on the passenger side as I looked at the sticker.

Q. You could see it through the front window?

A. Yes.

Q. But you couldn't, at this point and time, tell what the 'something' was?

A. No."

On cross-examination, at trial, Trooper Vujakovich testified as follows:

"Q. And you weren't able to tell what it was until you or your partner pulled it out?

A. Yes, sir; that's correct.

Q. Prior to the time you or your partner pulled it out, it was covered by a coat?

A. Partially covered, yes, sir.

Q. So much of it was covered that you couldn't tell it was a knife?

A. Yes, sir, or a bayonet.

Q. At the time the corporal pulled it out, you didn't know what it was?

A. No."

The case of *People v. Rogers*, 18 Ill.App.3d 940, 310 N.E.2d 854, presents a factual pattern similar to that which exists in the case at bar. In *Rogers*, a police officer stopped the automobile driven by the defendant because he had not properly signaled a right turn. At a hearing on a motion to suppress evidence, the officer testified that:

"'After I stopped the defendant and he did not produce a driver's license, I had occasion to look into the vehicle. I noticed the rear seat was pulled up and I noticed an object sticking from under it. I saw the barrel portion of a .12 gauge sawed-off shotgun. At that time I did not know that it was a shotgun. Approximately two or three inches of it was showing.'" (18 Ill.App.3d 940, 942.)

Defense counsel protested the trial court's ruling denying the motion to suppress the shotgun. It was urged that the officer had conducted a search without probable cause because he admitted that prior to conducting the search he did not know that the object in question was a shotgun. The judge then addressed the following question to the police officer:

> " 'THE COURT: When you observed this object sticking out, what did it appear to you to be?
>
> THE OFFICER: It appeared to be a gun.' " (18 Ill.App.3d 940, 942.)

The judge again denied the defendant's motion.

On appeal, the court in *Rogers* held the shotgun was in plain view, even though the officer "was unable specifically to identify the nature of the gun upon first observation."

> "Our examination of the officer's testimony convinces us that he saw what he believed to be a gun barrel protruding from beneath the rear seat and that upon further investigation he found it to be a sawed-off .12-gauge shotgun." 18 Ill.App.3d 940, 943.

■■ In the case at bar, the trooper's testimony was sufficient to establish that he saw what he believed to be a weapon of some sort protruding from beneath the front seat, and that upon further investigation he found it to be a bayonet. As in *Rogers,* it is of no moment that the trooper was unable to specifically identify the bayonet upon first observation. We therefore hold that the trial court properly determined that the officer's testimony was credible and that the bayonet handle was visible to him.

The law in Illinois is that a search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. (*People v. Davis,* 33 Ill.2d 134, 210 N.E.2d 530.) The bayonet was visible and in plain view, and therefore no search did occur. (See *People v. Zazzetti,* 6 Ill.App.3d 858, 286 N.E.2d 745.) Accordingly, the trial court properly denied the defendant's motion to suppress the bayonet.

The motion to suppress the black hat and the wig, seized pursuant to a search warrant, was also properly denied since the trooper had probable cause to believe that the defendant had committed an offense.

■■ Defendant's reliance on *People v. Tate,* 38 Ill.2d 184, 230 N.E.2d 697, is misplaced. That case involved a seizure of an envelope within which were found policy slips. There, the plain view doctrine was rejected because neither the envelope nor its visible contents, gave to the police an indication of their illicit nature. By contrast, in the instant appeal the objective facts upon which further investigation was justified

were the viewing of the bayonet handle, the operation of defendant's vehicle considerably below the speed limit, and the lack of a driver's license. For these reasons, the plain view doctrine was properly applied.

Finally, the defendant urges that he was prejudiced by the denial of a continuance in order to rebut the testimony of a surprise witness for the prosecution.

The record reveals that, on rebuttal, the prosecution presented Richard Nitz, a former cellmate of defendant, who testified Lott had admitted committing the robbery for which he was on trial as well as three other robberies. The prosecutor claimed he did not know about the witness until a few moments before the testimony was offered. Defense counsel did not know of the witness until the testimony was offered. The witness testified that seven or eight other prisoners had been present when defendant made the admission, but remembered the name of only one of those present.

The prosecution was initially informed of Nitz's desire to testify by DeWitt Babers, who was in jail on charges which were, according to defendant's brief, similar to those alleged against the defendant. Before Nitz testified, there was testimony that Babers had beaten Nitz and blackened his eye. Nitz denied that this beating was an attempt by Babers to force him to testify against Lott.

After the trial, defense counsel obtained six affidavits from prisoners and guards at the jail to the effect that Nitz admitted lying on the stand because of intimidation from Babers. These affidavits were filed as a supplement to defendant's post-trial motion.

Nitz admitted that he did not inform the prosecutor of Lott's statement until the day he testified.

The defendant moved for a continuance to secure witnesses to rebut Nitz's testimony. The motion was denied and the trial proceeded. As surrebuttal evidence, defendant testified that he never made the statement attributed to him by Nitz. He also stated Nitz had offered to testify that Babers had committed the offense in exchange for cigarettes.

■■ The People contend that the defendant waived this question for purposes of appeal because he failed to include it in his written post-trial motion. The post-trial motion and the supplemental post-trial motion made several assignments of error regarding the procedure surrounding the admission of the surprise rebuttal testimony. Although the argument relating to the continuance was not made in express terms by defense counsel in the post-trial motion, it was, by necessary implication, before the court.

■■ Generally, the failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue and cannot be urged as ground

for reversal on review. (*People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856.) The purposes of this rule are to obviate the necessity to appeal the case should the court pass favorably on the issue raised in the motion, and to give the reviewing court the benefit of the trial judge's reasoning should he rule unfavorably to the defendant. *People v. Irwin*, 32 Ill.2d 441, 207 N.E.2d 76.

In the instant case we believe the waiver rule should be relaxed. The continuance issue was adequately presented to the trial court on the motion to grant it. We have the benefit of counsel's arguments and the court's ruling in that regard. Because we think that defendant may have been prejudiced if his claim is well founded, we will consider the issue. *People v. Nunez*, 24 Ill.App.3d 163, 320 N.E.2d 462.

All motions for continuance are addressed to the discretion of the trial court. Such a motion is improperly denied when it appears that the refusal to grant additional time has in some manner embarrassed the defendant in the preparation of his defense and thereby prejudiced him. *People v. Canaday*, 49 Ill.2d 416, 275 N.E.2d 356.

Whether there has been an abuse of discretion in denying a motion for continuance depends upon the particular facts of each case. *People v. Bond*, 99 Ill.App.2d 45, 241 N.E.2d 218.

We must agree with defendant that the record in the instant case does not indicate the exercise of sound discretion.

In *People v. Kuczynski*, 23 Ill.2d 320, 178 N.E.2d 294, a witness identified the defendant at trial after stating at the preliminary hearing that he could not identify him. The Illinois Supreme Court held that the trial judge should have allowed the defendant's motion for a continuance on the grounds of surprise in order to procure witnesses to explain what occurred at the preliminary hearing.

We believe that, as in *Kuczynski*, defense counsel was surprised by Nitz's testimony. The record demonstrates that defense counsel did not learn of the witness until his testimony was offered. In light of the admissions attributed to defendant by this testimony, we cannot say that defendant was not prejudiced by the denial of his motion.

■■ The People argue that "Nitz was called as a rebuttal witness to impeach the credibility of the defendant," and that, in substance, "defense counsel was asking for time to impeach the testimony of an impeachment witness." While Nitz's testimony might partake of the character of impeachment evidence, it was also an admission of guilt and could therefore have been introduced in the State's case in chief.

The People's contention overlooks the principle which requires that the accused in a criminal case be permitted to introduce evidence in surrebuttal, where the prosecution in rebuttal is permitted to introduce

new matter. (*People v. White,* 14 Ill.App.3d 1079, 303 N.E.2d 36.) The trial judge would have been required to admit surrebuttal evidence, the purpose of which was to refute the testimony of Nitz, since such evidence would have been irrelevant and immaterial, and could therefore not have been presented, in the defendant's case in chief.

The denial of the motion for a continuance unduly restricted the defendant of the opportunity to present surrebuttal testimony in respect to a matter which was crucial to the issue of guilt. Under these circumstances, we conclude that the trial court did abuse its discretion in denying defendant a continuance.

We find particularly appropriate the following statement from *People v. Blumenfeld,* 330 Ill. 474, 489, 161 N.E. 857, in which the Illinois Supreme Court considered a denial of a motion for a continuance:

> "While it is highly important that justice should be speedily meted out and that criminals should be punished with celerity and dispatch, it is much more important that before punishment should be inflicted upon a person accused of crime full opportunity should be given to place the court in possession of all the facts bearing upon the question of the guilt or innocence of the accused, so that the court and jury may ascertain the truth as to whether or not the person accused is, in fact, guilty of the crime."

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and the cause remanded for a new trial.

Reversed and remanded.

BARRY, J., concurs.

Mr. JUSTICE ALLOY, dissenting:

I agree with the majority opinion in what is said as to all issues except the issue of determining whether the trial court exercised sound discretion in denying defendant's motion for continuance for the purpose of finding surrebuttal witnesses. As noted in the majority opinion, nowhere in the post-trial motion is there an issue raised concerning the propriety of the action of the court in denying defendant's motion for continuance. It should also be emphasized that the continuance involved here raises the question of whether or not to grant a continuance during the course of a trial. The action of the trial court in denying a continuance under such conditions should not be disturbed on review unless there is a manifest abuse of discretion. (*People v. Kees* (1965), 32 Ill.2d 299, 205 N.E. 2d 729.) From the record it appears that after the testimony of witness Nitz, defendant requested a continuance for the purpose of finding out

who was present when the admission was made, according to the testimony by Nitz. The trial court did not deny the defendant the opportunity to introduce evidence to refute the testimony by Nitz. The defendant himself testified and denied the statement made by Nitz as to admission of guilt. The court was, therefore, confronted with a motion for a continuance in the midst of a trial for the purpose of finding surrebuttal witnesses who might impeach a rebuttal witness. The affidavits as to other possible witnesses which were secured were secured several days after the trial, and were not presented when the motion was made.

To find that there was an abuse of discretion by the trial judge where a motion for continuance is made under such circumstances and where the evidence of guilt on part of defendant did not depend wholly on the testimony of Nitz, I believe, was not proper on review. Accordingly, I believe that there was no abuse of discretion on the part of the trial judge in denying the motion for continuance and that the judgment of the Circuit Court of Rock Island County should be affirmed.