THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK A. MANNA, JR., Defendant-Appellant.

Second District    No. 79-368

Opinion filed April 30, 1981.—Rehearing denied June 26, 1981.

Joseph M. Laraia, of Laraia & Kilander, of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William J. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Following a bench trial defendant, Frank A. Manna, was convicted of two counts of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(a) and 1401(b)) and sentenced to a term of 18 years imprisonment. He appeals assigning as error (1) the denial of his motion for discharge pursuant to the speedy trial provisions of section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(a)); (2) the failure of the State to disclose the identity and address of the government's paid informant until one week before trial; (3) the denial of his motion to suppress tape recordings; (4) the granting of his co-defendant's motion for a continuance of his trial on the day set for their joint trial which effectively severed the cases, thereby depriving defendant of his testimony; (5) improper reference by the State's Attorney to defendant's prior criminal record during closing arguments; (6) the denial of his motion to suppress certain evidence; (7) the failure of the State to show a continuous chain of possession of evidence; and (8) that his sentence was excessive.

Defendant was arrested on July 28, 1978, following the sale of cocaine, which had been arranged by an informant, to an undercover Federal agent. Defendant posted $10,000 bail, was released on the following day and on August 11, 1978, he filed a written demand for trial pursuant to 103—5(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(b)). The grand jury returned a nine-count indictment against defendant and his co-defendant on August 17, 1978, and when defendant appeared in court for arraignment on the indictment on August 22, 1978, he was arrested for a parole violation based upon his arrest for the charges then pending before the court. The court continued the case until September 11 and again until October 27 for completion of discovery by the parties. On October 27 defendant's retained counsel was given leave to withdraw and the public defender was appointed in his stead. Defendant stated he had not been given prior notice of his attorney's intention to withdraw and objected to it and to the appointment of the public defender on his behalf. The court then continued the case until November 9 to enable defendant to retain counsel and his new

attorney appeared on November 9 and was granted a continuance until November 13 in order to file additional motions. The new attorney, however, failed to appear on that date and the court continued the matter until November 22.

Defendant's counsel did appear on November 22 and filed a motion to suppress, a motion for disclosure and production of the informant, and a motion to suppress contents of recorded conversations. Despite the lack of notice to the State of the motions defendant filed on that day, the prosecutor acknowledged that defendant's motion to suppress evidence was sufficiently similar to the motion by the co-defendant set to be heard on that day and agreed to proceed with both. After hearing testimony and arguments for most of the day, the court denied defendant's motion to suppress evidence and continued the hearing on the other motions to December 28, which was also the date set for hearing of the co-defendant's similar motions. Defense counsel objected to the long date and advised the court that defendant was demanding trial.

Defendant's motion to suppress the tape-recorded conversations was heard on December 28 and denied by the court. His motion for disclosure of the identity of the informant, however, was granted, as was defendant's motion to revoke his bail. Defense counsel again generally demanded trial and the court set the case for trial on February 5, 1979. Defendant's subsequent motion for discharge for the State's failure to bring him to trial within 120 days of his arrest on August 22, 1978, was denied on February 6, 1979.

We consider first defendant's contention that he was denied his right to a speedy trial. Resolution of this issue involves a determination of whether defendant's incarceration for a parole violation based upon his arrest on the charges for which he had been released on bail will be considered as time "in custody" for purposes of computing the 120-day period within which a person in custody must be tried; or whether defendant was not in custody for purposes of this rule until he surrendered his bond on December 28, 1978. We conclude that the time spent in jail because of the parole violation charge must be counted and the question then becomes whether any delay is attributable to defendant. No issue is raised concerning the effect of defendant's arrest for a parole violation upon the 160-day trial period (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(b)), triggered by defendant's demand on August 11, 1978, while he was free on bond.

The effect upon a defendant's right to a speedy trial where he is incarcerated for a parole violation based upon the same charge for which he had been initially arrested was first raised in *People v. Patheal* (1963), 27 Ill. 2d 269, 189 N.E.2d 309. In rejecting the State's contention that the time spent in custody for violation of parole based upon defendant's

arrest for the underlying charges should not be counted towards computing the speedy trial period, the court noted:

"Fiction would supplant fact if we were to say that this entire period of confinement * * * is to be disregarded on the ground that Coles County had no legal authority to put the defendant in jail because he was technically within the custody of the Department of Public Safety. The constitutional right to a speedy trial does not depend upon such technicalities." (27 Ill. 2d 269, 271, 189 N.E.2d 309, 310.)

The court did not, however, base its decision upon this rationale, but held that "[e]ven if the [period defendant was incarcerated for the parole violation] is excluded from consideration, he was still held by the authorities of Coles County, without a trial, for a period just short of five months." (27 Ill. 2d 269, 262-73, 189 N.E.2d 309, 311.) *Patheal* was followed in *People v. Burchfield* (1978), 62 Ill. App. 3d 754, 379 N.E.2d 375, which held that where a defendant is in custody for a parole violation based upon the charge for which he is later to be tried, he is within the jurisdiction of the court and must be brought to trial within the 120-day period.

■■ Another district of the appellate court had earlier declined to follow *Patheal*, reasoning that the issue was there raised but not decided, and held in *People v. Daily* (1975), 30 Ill. App. 3d 413, 332 N.E.2d 146, that an arrest warrant for a criminal offense and a parole violation warrant were not interchangeable, and that defendant was not in custody for purposes of the 120-day rule until he asked for the return of his bail money. The *Burchfield* court, however, reasoned that *Daily* was inconsistent with *Patheal* and their earlier decision in *People v. Powell* (1976), 43 Ill. App. 3d 934, 357 N.E.2d 725. The *Daily* court also alternately based its ruling on the fact defendant had been released from jail on a recognizance bond before the expiration of the 120-day period. (30 Ill. App. 3d 413, 415, 332 N.E.2d 146, 148.) In the present case, the State argues that *Burchfield's* reliance on *Patheal* was misplaced and this court should follow *Daily* and hold that the 120-day period did not begin to run until defendant surrendered his bond on December 28, 1978. We believe the better view is as espoused in *People v. Patheal* (1963), 27 Ill. 2d 269, 189 N.E.2d 309, and *People v. Burchfield* (1978), 62 Ill. App. 3d 754, 379 N.E.2d 375, and conclude defendant was in custody for purposes of the speedy-trial statute from the time of his arrest on August 22, 1978. The question now becomes whether delay attributable to him will reduce the elapsed time to within the statutory 120 days.

The first time period to consider is that from defendant's arrest to the completion of discovery on October 27, 1978. The State apparently concedes this 66-day period is not chargeable to defendant and, as

defendant correctly points out, he has a right to discovery and therefore the time necessary to complete it is not always attributable to delay. *People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362; *People v. Nunnery* (1973), 54 Ill. 2d 372, 297 N.E.2d 129; *People v. Uryasz* (1975), 32 Ill. App. 3d 825, 336 N.E.2d 813.

■■ Defendant next contends that the delay occasioned by the withdrawal of his privately retained counsel on October 27, 1979, should not be attributable to him since he objected to his attorney's withdrawal and to the appointment of the public defender on his behalf. Defendant maintains that these facts bring this case outside this court's opinion in *People v. Eason* (1976), 44 Ill. App. 3d 308, 357 N.E.2d 1191, relied upon by the State, which held that delay occasioned by the withdrawal of counsel, to which defendant agrees or acquiesces, may be chargeable to him. He also relies upon *People v. Wyatt* (1962), 24 Ill. 2d 151, 180 N.E.2d 478, to support his contention that where a defendant takes advantage of an offer by the court of a continuance in order to find an attorney, the resulting delay will not be attributable to him. *Wyatt*, however, did not concern delay occasioned by withdrawal of counsel, but involved a defendant who had not yet retained a lawyer at the time he was arraigned. Defendant's argument is thus without merit since he did ask for time to find a new attorney, and the time from October 27, 1978, until November 9, 1978, when his new lawyer appeared, is chargeable to him. See *People v. Evans* (1979), 75 Ill. App. 3d 949, 394 N.E.2d 710.

■■ When his new lawyer appeared, he was granted until November 13, 1978, to file any motions and this delay is clearly occasioned by defendant. (*People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776.) Similarly, the delay caused by his counsel's failure to appear on that date, necessitating a continuance until November 22, 1978, is chargeable to defendant. *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Solheim* (1977), 54 Ill. App. 3d 379, 369 N.E.2d 308.

The next period to consider is that from November 22, 1978, until December 28, 1978. On November 22, defense counsel filed motions to suppress evidence and tape recordings, and to compel disclosure of the informant. Since the State acknowledged that the motion to suppress evidence was similar to that filed by the co-defendant, and it was thus ready to proceed, no delay was necessary to afford the State time in which to prepare for that motion. The hearing and arguments on the motion to suppress evidence took most of the day, and defendant's further motions to suppress tape recorded conversations and to compel disclosure of the informant were not reached.

■■ Ordinarily, a defendant will be charged with delay caused by filing a motion to suppress (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d

931), particularly where, as in the present case, defendant is aware that an evidentiary hearing will be required and the State will need time in which to prepare. (*People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776; *People v. Kemp* (1977), 49 Ill. App. 3d 270, 364 N.E.2d 944.) Since more time was required to hear defendant's motions, the resulting delay to December 28 would seem to be attributable to him. Defendant, however, contends that there is no reason for such a long delay until the motions could be heard and he asserts that this long date was set over his objection only for convenience, as December 28 was previously set for hearing on the co-defendant's similar motions.

■■ We do not agree. Although neither the State nor defendant requested the court to continue these motions until December 28, it was not unreasonable for the court to give the State until then in order to prepare. (See *People v. Kemp* (1977), 49 Ill. App. 3d 270, 364 N.E.2d 944 (six-week delay attributable to defendant).) Since the motions to be heard would affect both defendants, it was entirely reasonable for the court to hear them together at the co-defendant's scheduled court date. Moreover, we have found no indication in the record that an earlier date was available on the court's docket or that it inordinately prolonged the date of defendant's trial by selecting that date for hearing defendant's motions.

■■ While responsibility for delays caused by crowded dockets and prosecutorial case loads usually rests with the government, a defendant must share part of the blame where, as in the present case, he causes or concurs in a rescheduling. (*People v. DeCarlis* (1980), 88 Ill. App. 3d 634, 410 N.E.2d 677 (32-day continuance on court's motion attributable to defendant).) In our view, defense counsel's statement that: "I just want to make sure that the record is clear that the defendant Manna is, in fact, demanding trial and his next court date is December 28th * * *" cannot be considered as an objection to the date set by the court since defendant elected to continue to pursue his motions. (See *People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931.) A defendant cannot both file a motion which requires a "slow down in the judicial process so as to delay his trial" (*People v. Kemp*), and escape responsibility for the delay by making a perfunctory objection for the record.

■■ Defendant also argues that the time from December 28 until his trial on February 5, 1979, should not be chargeable to him because he repeatedly demanded an immediate trial. He notes that the transcript of the proceedings reflects that trial was set for January 16, 1979, but the court's written order entered on January 3, 1979, set the trial for February 5. He argues that under *People v. Nunnery* (1973), 54 Ill. 2d 372, 297 N.E.2d 129, this delay cannot be attributable to him because the court miscalculated the speedy trial period and selected a trial date beyond the 120-day period. The record, however, does not support defendant. The

trial court attempted to set trial as early as January 2, but could not do so because of the state of its docket and selected January 16. While there is no explanation in the record for the disparity between this date and the date set forth in the court's written order, it is clear that the delay was not the result of a miscalculation of the 120-day period and the delay resulting from defendant's intervening motions can therefore be attributable to him. Moreover, by December 28, when a trial date was chosen, defendant had been incarcerated beyond the 120-day period as a result of the delay in disposing of his motions.

Thus, when the delays for which defendant was responsible are taken into account he was brought to trial within the requisite period and was not denied his statutory right to a speedy trial.

We next consider whether the failure of the State to disclose the identity and address of the informant until one week before trial caused defendant prejudice sufficient to deny him a fair trial. The essence of defendant's claim of error in this regard is that since the informant was a witness to and a participant in the drug transaction which formed the basis of his conviction, the informant's testimony was essential in order to resolve any conflict between defendant's testimony and that of the undercover police agent. In order to evaluate defendant's contention, the facts surrounding his arrest must be considered.

Testimony adduced at trial discloses that Henry J. Braud, Jr., an undercover Federal narcotics agent, was introduced to the co-defendant by an informant employed by the Federal Government and made arrangements to purchase drugs from him. According to defendant's testimony, the co-defendant and the informant schemed to sell Braud milk sugar and not cocaine. In order to escape retribution should Braud discover their ploy, they sought to make it appear that defendant was the supplier of the drugs. When defendant arrived at the co-defendant's house in response to his telephone call, the co-defendant asked defendant to pretend to take something from his sock, which he did. The co-defendant then gave Braud a small package containing white powder and told Braud that defendant would return with the rest of the cocaine. As defendant was leaving, the co-defendant gave him a larger package of white powder and told him to return in 10 minutes. Defendant testified he examined the package after leaving the house and found that it contained milk sugar. Defendant claims he telephoned the co-defendant for an explanation of what he was up to but couldn't get a straight answer since Braud was in the room. Defendant then returned to the house and placed the package on the kitchen table, and Braud left to get money from his car. While Braud was outside, defendant asserts that the informant produced a different package which actually contained cocaine from a kitchen cupboard and placed it on the table. Within moments of Braud's

return, the other agents raided the house and in the confusion, the co-defendant took a gun and the bag which the informant placed on the table and ran outside, where he was apprehended. The informant followed with the package which defendant brought, but dropped it by the back door as he fled. Defendant maintains this package was never seized or analyzed and concludes that the informant's testimony would show defendant believed he was involved in a sale of milk sugar and not cocaine as he was charged.

■■ Defendant initially contends the trial court's pretrial discovery order that the State produce all evidence favorable to him and that it disclose whether electronic eavesdropping was used obligated the State to divulge the identity of the informant and that its failure to do so requires reversal. We fail to see how these orders can be construed as requiring the State to produce the informant. Although the informant had a transmitter concealed on his person, the trial court's order that defendant be informed of electronic surveillance did not obligate the State to disclose the identity of the informant. Similarly, the informant was under control of the Federal authorities, and the record discloses no basis upon which the State could be charged with knowledge that his testimony would benefit defendant.

Defendant next asserts that the State violated the court's order of December 28, 1978, to produce the informant by January 4, 1979, by not doing so until January 28, 1979, one week before trial. He contends this delay deprived him of the informant's testimony because the informant no longer resided at the Florida address supplied by the State and could not be found. Defendant did not, however, ask for a continuance in order to be able to locate this allegedly crucial witness. Although defendant's counsel stated on December 28 that he would not be able to go to trial without the informant, he did answer ready for trial on February 5. Before the trial began, defendant filed a motion for discharge for failure to produce the informant and asked the court to take it under advisement during the trial. No further mention of the informant was made until after defendant testified when, before resting his case, defense counsel informed the court that he would have called the informant had he been available.

■■ We feel that in light of these events, defendant was not unduly prejudiced by the absence of the informant. While he cites cases which hold that under certain circumstances an accused is entitled to know the identity of the government's paid informant (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685; *People v. Williams* (1968), 40 Ill. 2d 367, 240 N.E.2d 580; *People v. Gibson* (1977), 54 Ill. App. 3d 898, 370 N.E.2d 262; *People v. Avery* (1978), 61 Ill. App. 3d 327, 377 N.E.2d 1271), they concern either a denial by the State that an informant was involved

(*Avery*), or government activity aimed at denying a defendant meaningful access to the informant. There is nothing in the record of this case which indicates any effort on the part of the State to prevent defendant from interviewing the informant; the State agreed defendant was entitled to do so and his counsel in closing arguments suggested the informant's absence was due not to the fault of the State, but to the informant's fear of reprisal by the government should it discover he planned to take the money and the drugs. Moreover, in light of the fact that the informant was employed by the Federal Government and not readily available to the State, it did not unreasonably delay in providing defendant with his name and address. Defendant is not entitled to reversal on this ground.

We consider next whether the trial court erred in refusing to suppress tape recorded conversations and in allowing portions of them to be used in rebuttal by the State.

This claim of error involves an attempt by the defendant to escape the force of this court's decision in *People v. Fidler* (1979), 72 Ill. App. 3d 924, 391 N.E.2d 210. We there held that evidence obtained by Federal law enforcement officials under authority of a Federal search warrant, obtained as a result of electronic eavesdropping which conformed to Federal constitutional and statutory requirements, was admissible in a prosecution in State court, notwithstanding the failure to comply with Illinois' eavesdropping statutes (Ill. Rev. Stat. 1979, ch. 38, par. 108A—1 *et seq.*). The court reasoned that in the absence of collusion between Federal and State authorities seeking to avoid the Illinois Eavesdropping Statute, the exclusionary rule did not require suppression of the evidence seized.

In the present case, the consent of the informant, who had a transmitter concealed on his person, made the eavesdropping lawful under Federal standards. (See *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 405 N.E.2d 809; *People v. Woolums* (1981), 93 Ill. App. 3d 144, 149, 416 N.E.2d 725, 729 (one-party consent to electronic surveillance does not violate the fourth amendment).) Defendant's attorney agreed during the proceedings below that the Federal requirements for eavesdropping were met, although there was no attempt to secure compliance with the Illinois statutes. Defendant contends that *Fidler* is distinguishable because the investigation in the present case was a joint Federal and State enterprise. We disagree. The eavesdropping was conducted by Federal officials who were investigating a possible violation of Federal law, and the State officers were present only to protect the Federal officers. While the facts of this case do not precisely parallel those of *Fidler*, here, as in that case, there is nothing in the record which suggests a collusive attempt to evade the Illinois eavesdropping statute. We conclude defendant's motion to suppress the tape recorded conversation was properly denied.

We consider next whether the trial court erroneously granted a continuance to the co-defendant on the day of trial.

■■ Defendant's claim of error in this regard is that the co-defendant would corroborate his version of the events leading to his arrest and that the court, by effectively severing the cases, precluded him from compelling the attendance of his co-defendant. Defendant cites no authority in support of this argument and it is without merit. It should be obvious that defendant could have compelled the co-defendant to be present by serving him with a subpoena but could not require him to testify. Defendant lost nothing by reason of the continuance granted to the co-defendant. In addition, since defendant claimed that the co-defendant was the one who actually supplied the cocaine, their defenses would be antagonistic and either defendant would therefore be entitled to a severance (see *People v. Dorsey* (1980), 88 Ill. App. 3d 712, 410 N.E.2d 1132; *People v. McMullen* (1980), 88 Ill. App. 3d 611, 410 N.E.2d 1174). Moreover, the right to a severance because of antagonistic defenses would seem to belong to the defendant affected and the remaining defendant could have no standing to complain. Accordingly, the trial court did not err in granting a continuance to the co-defendant.

■■ Defendant next contends that the prosecution made improper reference to his criminal history during closing arguments. Initially, it should be noted that since this was a bench trial, the trial judge is presumed to disregard improper evidence or argument (*People v. Robinson* (1964), 30 Ill. 2d 437, 197 N.E.2d 45). Accordingly, if improper reference to defendant's criminal history was made, defendant is not entitled to reversal because he has not shown how the court's ruling was tainted by such argument. Moreover, since defendant made no objection at trial to any portion of the State's closing argument, any claim of error is waived. See *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708; *Brumley v. Federal Barge Lines, Inc.* (1979), 78 Ill. App. 3d 799, 396 N.E.2d 1333.

We next consider whether the trial court erred in denying defendant's motion to suppress evidence. Defendant's arguments are twofold: First, that the police officers did not have probable cause to make their warrantless entry into the co-defendant's home because their only knowledge that a crime was being committed came from illegal electronic surveillance; and second, that the evidence was not seized from an area within defendant's control at the time of his arrest.

■■ It is apparent that defendant's initial contention lacks substance since, as we earlier noted, the electronic surveillance was not illegal. The surveillance officers also had probable cause to believe an offense was being committed when the undercover agent received delivery of material represented to be a controlled substance and gave the other officers a

pre-arranged signal that contraband was in the house. Defendant's further contention that the agent lacked probable cause to believe a crime was being committed because he did not test either package to determine whether it contained cocaine is without merit since delivery of material represented to be a controlled substance is also an offense. Ill. Rev. Stat. 1979, ch. 56½, par. 1404.

■■ Defendant's contention that a warrantless search incident to an arrest is limited to the area within an accused's immediate control is a correct statement of law (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022; *People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577), but it does not help him in this case. Although defendant was arrested in a bedroom and some of the evidence was seized in the kitchen, and the search was arguably not of an area within his control, the 7 3/4-ounce package of cocaine was seized almost from the co-defendant's hand as he ran from the house. The one-quarter-ounce package was lying on the kitchen table and was thus seized in the plain view of the arresting officers. (*Cf. People v. Montgomery* (1980), 84 Ill. App. 3d 695, 405 N.E.2d 1275; *People v. Faine* (1980), 88 Ill. App. 3d 387, 410 N.E.2d 617.) While the officers did search the kitchen cabinets and recovered additional contraband, it is not clear from this record whether these items were offered in evidence against defendant; his conviction of two counts of delivery of a controlled substance was based upon the evidence of the one-quarter-ounce and the 7 3/4-ounce packages. Hence, were we to assume the search of the cabinets was improper, defendant was not affected by it and, accordingly, defendant's motion to suppress was properly denied.

We next consider whether the State failed to show a continuous chain of possession of the items seized.

■■ Defendant challenges the admission into evidence of the one-quarter-and 7 3/4-ounce packages on the grounds there was no evidence that either bag was brought into the premises by him and that placing them overnight in a DEA vault to which several persons had access did not satisfy the State's burden of proving a continuous chain of possession. Defendant's argument is without merit in two respects: His first contention is more properly a challenge of the relevancy of the evidence in his trial. The trial judge resolved the conflict between defendant's testimony that the informant placed another bag on the table and that defendant did not bring anything into the house on his first visit, and the contrary testimony of the agent, against defendant. We will not disturb that determination. Defendant's second contention also must fail as the evidence offered to establish the chain of possession of the recovered

material negated the possibility of tampering, alteration, or substitution (see *People v. Terrile* (1980), 86 Ill. App. 3d 665, 408 N.E.2d 234). Moreover, defendant's objections to custody of the evidence at trial were directed only to the early stage, *i.e.*, that the bags seized were not delivered by him, and not the latter stage of the chain, and he waived the error now urged when his counsel acknowledged in the trial court "[f]rom the point that it was taken into custody by [one of the arresting officers] I have no problem."

■■ Defendant's final contention is that his sentence of 18 years is excessive in light of his youth (24 years old), his marriage, and his claimed status as a minor drug trafficker. We disagree. The sentence, although severe, was well within the 6- to 30-year range available for a Class X felony (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(3)) and his prior convictions for felony theft, a misdemeanor weapons charge, driving while license suspended, and delivery of a controlled substance (for which he was on parole at the time of his arrest), clearly show him to be a dim prospect for early rehabilitation. Accordingly, the trial court did not abuse its discretion in imposing a sentence of 18 years.

For the foregoing reasons, defendant's conviction and sentence for delivery of a controlled substance is affirmed.

Affirmed.

SEIDENFELD, P. J., and REINHARD, J., concur.